# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
## ONE BOWLING GREEN
## NEW YORK, NY 10004-1408

March 16, 2021

U.S. District Court
Southern District of New York
Attn: Ruby J. Krajick, Clerk
500 Pearl Street
New York, NY 10007

**IN RE:  CASE NAME:**

CENTURY 21 DEPARTMENT STORES, LLC,
66 PEARL RETAIL, LLC, 66 PEARL RETAIL II, LLC,
66 PEARL RETAIL ISG, LLC, 173 BWAY BLUE LLC,
262 MOTT BLUE TIC LLC,
444 86 BLUE LLC, MIAMI DD 101 BLUE LLC,
28 NEWBURY JSRE TIC LLC, TRUE BLUE
ASSOCIATES LLC, STAR OF DAVID,
IRAYMOND-77 WARREN LLC, SABRA
ASSOCIATES LLC, 315 SEVENTH RETAIL LLC,
WEBWAY ASSOCIATES LLC, and CENTURY 21, INC.,

          Plaintiffs,

v.

STARR SURPLUS LINES INSURANCE CO.,
ALLIANZ GLOBAL RISKS US INSURANCE CO.,
AXIS SURPLUS LINES INSURANCE CO.,
LIBERTY MUTUAL FIRE INSURANCE CO.,
STEADFAST INSURANCE CO., ENDURANCE
AMERICAN SPECIALTY INSURANCE CO.,
EVANSTON INSURANCE CO., LANDMARK
AMERICAN INSURANCE CO., QBE SPECIALTY
INSURANCE CO., GREAT AMERICAN FIDELITY
INSURANCE CO., and
CERTAIN UNDERWRITERS AT LLOYDS
SUBSCRIBING TO POLICY Nos. PG1902704,
PG1902346, PG1902696, PG1902698, PG1902707,
PG1902702, and PG1902712,

         Defendants.

**ADVERSARY CASE NUMBER: 20-01222 (SCC)**

**INDEX NO.:  652975/2020**

Dear Ruby J. Krajick:

An Order was signed on February 18, 2021, by **Judge Shelley C. Chapman** of the U.S. Bankruptcy Court Southern District of New York, Remanding Adversary Proceeding # **20-1222 (SCC)** to the Supreme Court of the State of New York, New York County.

*The attached certified order directs the Clerk of the U.S. District Court for the Southern District of New York to remand the Insurance Action to the Supreme Court of the State of New York, County of New York.*

In response to the Order, we are providing you the following:

**X**     **CERTIFIED COPY OF THE ORDER**
**X**     **CERTIFIED COPY OF THE ADVERSARY DOCKET**

Enclosed, please find a copy of this letter to acknowledge receipt of these documents. If you need further information regarding this matter, please contact Ms. Mary Lopez at (212) 284-4076.

Yours truly,

                                        VITO GENNA, CLERK

                              By:     /s/ Mary Lopez
                                          Deputy Clerk


**RECEIPT IS ACKNOWLEDGED OF THE DOCUMENTS DESCRIBED ABOVE**

**RECEIVED BY** _____ **ON DATE** _____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **Chapter 11** |
| **CENTURY 21 DEPARTMENT STORES LLC,** *et al.,* | **Case No. 20-12097 (SCC)** |
| Debtors.[1] | **(Jointly Administered)** |

CENTURY 21 DEPARTMENT STORES, LLC,
66 PEARL RETAIL, LLC, 66 PEARL RETAIL II, LLC,
66 PEARL RETAIL ISG, LLC, 173 BWAY BLUE LLC,
262 MOTT BLUE TIC LLC,
444 86 BLUE LLC, MIAMI DD 101 BLUE LLC,
28 NEWBURY JSRE TIC LLC, TRUE BLUE
ASSOCIATES LLC, STAR OF DAVID,
IRAYMOND-77 WARREN LLC, SABRA
ASSOCIATES LLC, 315 SEVENTH RETAIL LLC,
WEBWAY ASSOCIATES LLC, and CENTURY 21,
INC.,

        Plaintiffs,

        v.

STARR SURPLUS LINES INSURANCE CO.,
ALLIANZ GLOBAL RISKS US INSURANCE CO.,
AXIS SURPLUS LINES INSURANCE CO.,
LIBERTY MUTUAL FIRE INSURANCE CO.,
STEADFAST INSURANCE CO., ENDURANCE
AMERICAN SPECIALTY INSURANCE CO.,
EVANSTON INSURANCE CO., LANDMARK
AMERICAN INSURANCE CO., QBE SPECIALTY
INSURANCE CO., GREAT AMERICAN FIDELITY
INSURANCE CO., and
CERTAIN UNDERWRITERS AT LLOYDS
SUBSCRIBING TO POLICY Nos. PG1902704,
PG1902346, PG1902696, PG1902698, PG1902707,
PG1902702, and PG1902712,

        Defendants.

**Adv. Proc. No. 20-01222 (SCC)**

---

[1]    The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are Century 21 Department Stores LLC (4073), L.I. 2000, Inc. (9619), C21 Department Stores Holdings LLC (8952), Giftco 21 LLC (0347), Century 21 Fulton LLC (4536), C21 Philadelphia LLC (2106), Century 21 Department Stores of New Jersey, L.L.C. (1705), Century 21 Gardens of Jersey, LLC (9882), C21 Sawgrass Blue, LLC (8286), C21 GA Blue LLC (5776), and Century Paramus Realty LLC (5033).  The Debtors' principal place of business is: 22 Cortlandt Street, 5th Floor, New York, NY 10007.

## ORDER GRANTING DEFENDANTS' MOTION TO REMAND

Upon the motion dated October 21, 2020, (the "Motion")[2] of the above-captioned defendants (the "Defendants") for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), or, in the alternative, permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) or remand pursuant to 28 U.S.C. § 1452(b), and the declaration in support thereof, with exhibits thereto; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157, 1334, and 1452(b), and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated February 1, 2012; and due and proper notice of the Motion having been provided to the parties affected thereby; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and all pleadings filed in response to the Motion; and the Court having held oral argument on the Motion on December 16, 2020; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and all objections to the Motion having been overruled on the merits; and upon all of the proceedings had before the Court, after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED for the reasons set forth in the Court's bench ruling dictated on the record of the hearing held on February 12, 2021; an uncorrected version of the February 12, 2021 hearing transcript is attached hereto as Exhibit A.

2.      The Insurance Action shall be and hereby is REMANDED pursuant to 28 U.S.C. § 1452(b) to the Supreme Court of the State of New York for the County of New York (the "State Court"), and:

---

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.



a. The clerk of this Court shall send certified copies of this Order to the Clerk of the U.S. District Court for the Southern District of New York (the "SDNY Clerk");

b. The SDNY Clerk shall:

    i. REMAND the Insurance Action pursuant to 28 U.S.C. 1452(b) to the State Court; and

    ii. Send the clerk of the State Court certified copies of this Order.

3.     After the Insurance Action has been remanded to the State Court, the above-captioned adversary proceeding shall be closed without further order of this Court.

4.     This Court shall retain jurisdiction solely to interpret and enforce this Order.

Dated: February 18, 2021

    New York, New York

                         /s/ Shelley C. Chapman
                    HONORABLE SHELLEY C. CHAPMAN
                    UNITED STATES BANKRUPTCY JUDGE



# U.S. Bankruptcy Court
## Southern District of New York (Manhattan)
### Adversary Proceeding #: 20-01222-scc

*Assigned to:* Judge Shelley C. Chapman
*Lead BK Case:* 20-12097
*Lead BK Title:* Century 21 Department Stores LLC
*Lead BK Chapter:* 11
*Demand:*

*Date Filed:* 09/22/20
*Date Removed From State:* 09/22/20

*Nature[s] of Suit:* 02 Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)

### *Plaintiff*
-----------------------

**Century 21 Department Stores LLC**
22 Cortlandt Street
5th Floor
New York, NY 10007
Tax ID / EIN: 13-4144073

represented by **Dennis T D'Antonio**
Weg and Myers, P.C.
52 Duane Street
FL 2
New York, NY 10007
212-227-4210
Fax : 212-349-6702
Email: ddantonio@wegandmyers.com

**Lucy F Kweskin**
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
212-506-2479
Email: lucy.kweskin@srz.com

**Steve Y Ma**
Proskauer Rose LLP
11 Times Square
New York, NY 10036
212-969-3488
Email: sma@proskauer.com
*LEAD ATTORNEY*

**Matthew Skrzynski**
Proskauer Rose LLP
11 Times Square
New York, NY 11036
212-969-3726
Email: mskrzynski@proskauer.com

### *Plaintiff*
-----------------------



**66 Pearl Retail, LLC**                    represented by **Dennis T D'Antonio**
                                            (See above for address)

                                            **John E. Jureller, Jr.**
                                            Klestadt Winters Jureller
                                            Southard & Stevens, LLP
                                            200 West 41st Street
                                            17th Floor
                                            New York, NY 10036
                                            (212) 972-3000
                                            Fax : (212) 972-2245
                                            Email: jjureller@klestadt.com


*Plaintiff*
------------------------
**66 Pearl Retail II, LLC**                 represented by **Dennis T D'Antonio**
                                            (See above for address)

                                            **John E. Jureller, Jr.**
                                            (See above for address)


*Plaintiff*
------------------------
**66 Pearl Retail ISG, LLC**                represented by **Dennis T D'Antonio**
                                            (See above for address)

                                            **John E. Jureller, Jr.**
                                            (See above for address)


*Plaintiff*
------------------------
**173 Bway Blue LLC**                       represented by **Dennis T D'Antonio**
                                            (See above for address)

                                            **John E. Jureller, Jr.**
                                            (See above for address)


*Plaintiff*
------------------------
**262 Mott Blue TIC LLC**                   represented by **Dennis T D'Antonio**
                                            (See above for address)

                                            **John E. Jureller, Jr.**
                                            (See above for address)



*Plaintiff*
------------------------
**444 86 Blue LLC**                     represented by **Dennis T D'Antonio**
                                        (See above for address)

                                        **John E. Jureller, Jr.**
                                        (See above for address)


*Plaintiff*
------------------------
**Miami DD 101 Blue LLC**               represented by **Dennis T D'Antonio**
                                        (See above for address)

                                        **John E. Jureller, Jr.**
                                        (See above for address)


*Plaintiff*
------------------------
**28 Newbury JSRE TIC LLC**             represented by **Dennis T D'Antonio**
                                        (See above for address)

                                        **John E. Jureller, Jr.**
                                        (See above for address)


*Plaintiff*
------------------------
**True Blue Associates LLC**            represented by **Dennis T D'Antonio**
                                        (See above for address)

                                        **John E. Jureller, Jr.**
                                        (See above for address)


*Plaintiff*
------------------------
**Star of David**                       represented by **Dennis T D'Antonio**
                                        (See above for address)

                                        **John E. Jureller, Jr.**
                                        (See above for address)


*Plaintiff*
------------------------
**IRaymond-77 Warren LLC**              represented by **Dennis T D'Antonio**
                                        (See above for address)



John E. Jureller, Jr.
(See above for address)

*Plaintiff*
-----------------------

**Sabra Associates LLC**                represented by  **Dennis T D'Antonio**
                                                        (See above for address)

                                                        **John E. Jureller, Jr.**
                                                        (See above for address)

*Plaintiff*
-----------------------

**315 Seventh Retail LLC**              represented by  **Dennis T D'Antonio**
                                                        (See above for address)

                                                        **John E. Jureller, Jr.**
                                                        (See above for address)

*Plaintiff*
-----------------------

**Webway Axxociates LLC**               represented by  **Dennis T D'Antonio**
                                                        (See above for address)

                                                        **John E. Jureller, Jr.**
                                                        (See above for address)

*Plaintiff*
-----------------------

**Century 21 Inc.**                     represented by  **Dennis T D'Antonio**
                                                        (See above for address)

                                                        **John E. Jureller, Jr.**
                                                        (See above for address)

V.

*Defendant*
-----------------------

**Starr Surplus Lines Insurance C0.**   represented by  **Craig Goldblatt**
                                                        Wilmer Cutler Pickering Hale & Dorr LLP
                                                        1875 Pennsylvania Avenue NW
                                                        Washington, DC 20006
                                                        202-663-6483

Email: craig.goldblatt@wilmerhale.com

**Meegan F. Hollywood**
Robins Kaplan LLP (NYC)
399 Park Avenue, 36th Floor
New York, NY 10022
(212) 980-7400
Email: mfhollywood@rkmc.com
*LEAD ATTORNEY*

**Benjamin Loveland**
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
617-526-6641
Email: benjamin.loveland@wilmerhale.com

**Defendant**
--------------------------
**Allianz Global Risks US Insurance Co.**    represented by **Michael D. Hynes**
DLA Piper US LLP
1251 Avenue of the Americas
27th Flooor
New York, NY 10020
212-335-4500
Email: michael.hynes@dlapiper.com
*LEAD ATTORNEY*

**Jamila J. Willis**
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
212-335-4500
Fax : 212-335-4501
Email: jamila.willis@dlapiper.com

**Defendant**
----------------------
**Axis Surplus Lines Insurance Co.**    represented by **Kristin Vonderhorst Gallagher**
Kennedys
120 Mountain View Boulevard
P.O. Box 650
Baskin Ridge, NJ 07920
908-848-6300
Email: kristin.gallagher@kennedyslaw.com
*LEAD ATTORNEY*

**Joanna L. Young**
Kennedys CMK LLP

570 Lexington Avenue
Ste 8th Floor
New York, NY 10022
212-252-0004
Fax : 212-252-0444
Email: joanna.young@kennedyslaw.com

**Joanna Lyn Young**
Kennedys CMK LLP
570 Lexington Avenue
8th Floor
New York, NY 10022
212-252-0004
Email: joanna.young@kennedyslaw.com
*LEAD ATTORNEY*

*Defendant*
----------------------

**Liberty Mutual Fire Insurance Co.**          represented by **Philip D. Anker**
                                               Wilmer Cutler Pickering Hale and Dorr
                                               7 World Trade Center
                                               New York, NY 10007
                                               (212) 230-8800
                                               Fax : (212) 230-8888
                                               Email: philip.anker@wilmerhale.com

                                               **Craig Goldblatt**
                                               (See above for address)

                                               **Meegan F. Hollywood**
                                               Robins Kaplan LLP (NYC)
                                               399 Park Avenue, 36th Floor
                                               New York, NY 10022
                                               (212) 980-7499
                                               Email: mfhollywood@rkmc.com
                                               *LEAD ATTORNEY*

                                               **Benjamin Loveland**
                                               (See above for address)

*Defendant*
-----------------------

**Steadfast Insurance Co.**                    represented by **Philip D. Anker**
                                               (See above for address)

                                               **Craig Goldblatt**
                                               (See above for address)

                                               **Meegan F. Hollywood**



(See above for address)
*LEAD ATTORNEY*

**Benjamin Loveland**
(See above for address)

**Defendant**
------------------------

**Endurance American Specialty**          represented by **Philip D. Anker**
**Insurance Co.**                                      (See above for address)

                                                       **William Michael Cooney**
                                                       Clyde & Co US LLP (NYC)
                                                       405 Lexington Ave
                                                       New York, NY 10174
                                                       212-710-3900
                                                       Email: william.cooney@clydeco.us
                                                       *LEAD ATTORNEY*

                                                       **Craig Goldblatt**
                                                       (See above for address)

                                                       **Corey R Greenwald**
                                                       The Chrysler Building, 405 Lexington Avenue, 16th
                                                       New York, NY 10174
                                                       212-710-3900
                                                       Email: corey.greenwald@clydeco.us

                                                       **Corey Russell Greenwald**
                                                       Clyde & Co US LLP (NYC)
                                                       405 Lexington Ave
                                                       New York, NY 10174
                                                       (212)-710-3900
                                                       Email: corey.greenwald@clydeco.us
                                                       *LEAD ATTORNEY*

**Defendant**
------------------------

**Evanstan Insurance Co.**                represented by **Cynthia Louise Bernstiel**
                                                       McClellan Bernstiel, LLP
                                                       325 Sentry Parkway
                                                       Building 5 West
                                                       Suite 200
                                                       Blue Bell, PA 19422
                                                       610-910-8489
                                                       Email: cyndi@mcbelaw.com

                                                       **Craig Goldblatt**
                                                       (See above for address)



*Defendant*
------------------------

**Landmark American Insurance Co.**    represented by **Philip D. Anker**
(See above for address)

**Craig Goldblatt**
(See above for address)

**Meegan F. Hollywood**
(See above for address)
*LEAD ATTORNEY*

**Benjamin Loveland**
(See above for address)

*Defendant*
------------------------

**Certain Underwriters At Lloyds**    represented by **Philip D. Anker**
**Subscribing To Policy Nos.**                      (See above for address)
**PG1902704, PG1902346, PG1902696,**
**PG1902698, PG1902707, PG1902702,**    **Craig Goldblatt**
**and PG1902712**                       (See above for address)

**Meegan F. Hollywood**
(See above for address)
*LEAD ATTORNEY*

**Benjamin Loveland**
(See above for address)

*Defendant*
------------------------

**QBE Specialty Insurance Company**    represented by **Philip D. Anker**
(See above for address)

**Craig Goldblatt**
(See above for address)

**Isabella Karlina Stankowski-Booker**
Zelle LLP
45 Broadway
Suite 920
New York, NY 10006
864-766-9998
Email: istankowski@zelle.com
*LEAD ATTORNEY*



Case 1:20-cv-07437-LGS   Document 32   Filed 04/27/21   Page 14 of 110

**Defendant**
------------------------

**Great American Fidelity Insurance**          represented by **Kevin Buckley**
**Co**                                                          Mound Cotton Wollan & Greengrass LLP
                                                                One New York Plaza
                                                                New York
                                                                New York, NY 10004
                                                                212-804-4200
                                                                Email: kbuckley@moundcotton.com

                                                                **Tyler William Flynn**
                                                                Mound Cotton Wollan & Greengrass LLP
                                                                1 New York Plaza
                                                                Ste 44th Floor
                                                                New York, NY 10004
                                                                212-804-4524
                                                                Email: tflynn@moundcotton.com


**Defendant**
------------------------

**Evanston Insurance Company**                 represented by **Philip D. Anker**
                                                                (See above for address)

                                                                **Craig Goldblatt**
                                                                (See above for address)


**Defendant**
------------------------

**Starr Surplus Lines Insurance Co.**          represented by **Philip D. Anker**
                                                                (See above for address)


*Claims and Noticing Agent*
------------------------

**Stretto**
8269 E. 23rd Avenue
Suite 275
Denver, CO 80238
(855) 812-6112


*Creditor Committee*
------------------------

**Official Committee of Unsecured**            represented by **Jeffrey L. Cohen**
**Creditors of Century 21 Department**                          Lowenstein Sandler LLP
**Stores LLC, et al.**                                          1251 Avenue of the Americas



17th Floor
New York, NY 10020
(212) 262-6700
Fax : (212) 262-7402
Email: jcohen@lowenstein.com

| Filing Date | # | Docket Text |
|---|---|---|
| 09/22/2020 | ◉ 1 <br> (289 pgs; 24 docs) | Adversary case 20-01222. Copy of Certified Order Transferring Case No. *1:20-cv-7437 (LGS)* from the U.S. District Court, S.D.N.Y. to the U.S. Bankruptcy Court, S.D.N.Y. (Receipt Number ANYSDC-21601520, Fee Amount $ 350.). Nature(s) of Suit: (02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) Filed by Steve Y Ma on behalf of Century 21 Department Stores LLC, 66 Pearl Retail, LLC, 66 Pearl Retail II, LLC, 66 Pearl Retail ISG, LLC, 173 Bway Blue LLC, 262 Mott Blue TIC LLC, 444 86 Blue LLC, Miami DD 101 Blue LLC, 28 Newbury JSRE TIC LLC, True Blue Associates LLC, Star of David, IRaymond-77 Warren LLC, Sabra Associates LLc, 315 Seventh Retail LLC, Webway Axxociates LLC, Century 21 Inc.. (Attachments: # 1 Doc 2 Civil Cover sheet # 2 Doc 3 Rule 7.1 # 3 Doc 4 Answer # 4 Doc 5 Answer # 5 Doc 6 Answer # 6 Doc 7 Answer # 7 Doc 8 Amswer # 8 Doc 9 Notice # 9 Doc 10 Rule 7.1 # 10 Doc 11 Answer # 11 Doc 12 Notice # 12 Doc 13 notice of appearance # 13 Doc 14 Rule 7.1 # 14 Doc 15 Answer # 15 Doc 16 Answer # 16 Doc 17 Letter # 17 Doc 18 Notice of Appearance # 18 Doc 19 Rule 7.1 # 19 Doc 20 Answer # 20 Doc 21 Notice of Appearance # 21 Doc 22 Memo Endorsement # 22 Doc 23 SDNY Transfer Order # 23 SDNY Docket Sheet) (Pisarczyk, Gladys) Modified on 9/23/2020 (Braithwaite, Kenishia). (Entered: 09/22/2020) |
| 09/22/2020 | ◉ 2 <br> (5 pgs) | Notice of Appearance in Adversary Proceeding filed by Jamila J. Willis on behalf of Allianz Global Risks US Insurance Co.. (Willis, Jamila) (Entered: 09/22/2020) |
| 09/22/2020 | ◉ 3 <br> (2 pgs) | Letter *to Judge Chapman Re: Request for Telephonic Scheduling Conference* Filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. (Kweskin, Lucy) (Entered: 09/22/2020) |
| 09/23/2020 | ◉ 4 <br> (1 pg) | Notice of Pre-Trial Conference for a Removed Case with Pre-Trial Conference set for 10/14/2020 at 10:00 AM at Courtroom 623 (SCC), (Braithwaite, Kenishia) (Entered: 09/23/2020) |

| | | |
|---|---|---|
| 09/25/2020 | ◑ 5<br>(4 pgs) | Statement *of Intention Demand for Trial by Jury* filed by Jamila J. Willis on behalf of Allianz Global Risks US Insurance Co.. (Willis, Jamila) (Entered: 09/25/2020) |
| 09/25/2020 | ◑ 6<br>(14 pgs; 3 docs) | Statement *of Defendant Allianz Global Risks US Ins. Co. Pursuant to Fed. R. Bankr. P. 9027(e)(3)* filed by Jamila J. Willis on behalf of Allianz Global Risks US Insurance Co.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Willis, Jamila) (Entered: 09/25/2020) |
| 09/25/2020 | ◑ 7<br>(5 pgs) | Affidavit of Service *re: Request for Telephonic Scheduling Conference (Docket No. 3)* (related document(s)3) filed by Stretto.(Klamser, Robert) (Entered: 09/25/2020) |
| 09/25/2020 | ◑ 8<br>(6 pgs) | Notice of Appearance filed by Benjamin Loveland on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Loveland, Benjamin) (Entered: 09/25/2020) |
| 09/25/2020 | ◑ 9<br>(5 pgs) | Statement / *Rule 9027(e)(3) Statement of Certain Insurers* filed by Benjamin Loveland on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Loveland, Benjamin) (Entered: 09/25/2020) |
| 09/25/2020 | ◑ 10<br>(4 pgs) | Application for Pro Hac Vice Admission filed by Benjamin Loveland on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Loveland, Benjamin) (Entered: 09/25/2020) |
| 09/25/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14367652. Fee amount 200.00. (Re: Doc # 10) (U.S. Treasury) (Entered: 09/25/2020) |

| | | |
|---|---|---|
| 09/25/2020 | ◉ 11 (5 pgs) | Statement *Rule 9027(e)(3) Statement of QBE Specialty Insurance Company* filed by Isabella Karlina Stankowski-Booker on behalf of QBE Specialty Insurance Company. (Stankowski-Booker, Isabella) (Entered: 09/25/2020) |
| 09/25/2020 | ◉ 12 (4 pgs) | Statement of Intention *pursuant to FRBP 9027(e)(3)* Filed by Corey R Greenwald on behalf of Endurance American Specialty Insurance Co.. (Greenwald, Corey) (Entered: 09/25/2020) |
| 09/25/2020 | ◉ 13 (4 pgs) | Statement of Intention *(Jury Demand)* Filed by Corey R Greenwald on behalf of Endurance American Specialty Insurance Co.. (Greenwald, Corey) (Entered: 09/25/2020) |
| 09/25/2020 | ◉ 14 (4 pgs) | Notice of Hearing *for September 30, 2020 at 11:00 A.M. (ET)* filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. (Kweskin, Lucy) (Entered: 09/25/2020) |
| 09/28/2020 | ◉ 15 (2 pgs) | Order Granting Application for Pro Hac Vice Admission of Benjamin W. Loveland (Related Doc # 10) signed on 9/28/2020 (White, Greg) (Entered: 09/28/2020) |
| 09/28/2020 | ◉ 16 (4 pgs) | Application for Pro Hac Vice Admission filed by Craig Goldblatt on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Goldblatt, Craig) (Entered: 09/28/2020) |
| 09/28/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14371298. Fee amount 200.00. (Re: Doc # 16) (U.S. Treasury) (Entered: 09/28/2020) |
| 09/28/2020 | ◉ 17 (2 pgs) | Order Granting Application for Pro Hac Vice Admission of Craig Goldblatt (Related Doc # 16) signed on 9/28/2020 (White, Greg) (Entered: 09/28/2020) |
| 09/29/2020 | ◉ 18 (4 pgs) | Application for Pro Hac Vice Admission *of Matthew M. Burke, Esq.* filed by Craig Goldblatt on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Goldblatt, Craig) (Entered: 09/29/2020) |

| | | |
|---|---|---|
| 09/29/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14375435. Fee amount 200.00. (Re: Doc # 18) (U.S. Treasury) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐19 (6 pgs) | Corporate Ownership Statement . Filed by Craig Goldblatt on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712. (Goldblatt, Craig) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐20 (4 pgs) | Corporate Ownership Statement . Corporate parents added to case: RSUI Indemnity Company. Filed by Craig Goldblatt on behalf of Landmark American Insurance Co.. (Goldblatt, Craig) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐21 (4 pgs) | Corporate Ownership Statement . Corporate parents added to case: Liberty Mutual Group Inc.. Filed by Craig Goldblatt on behalf of Liberty Mutual Fire Insurance Co.. (Goldblatt, Craig) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐22 (5 pgs) | Corporate Ownership Statement . Corporate parents added to case: Starr Indemnity and Liability Company, Inc.. Filed by Craig Goldblatt on behalf of Starr Surplus Lines Insurance C0.. (Goldblatt, Craig) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐23 (4 pgs) | Corporate Ownership Statement . Corporate parents added to case: Zurich American Insurance Company. Filed by Craig Goldblatt on behalf of Steadfast Insurance Co.. (Goldblatt, Craig) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐24 (2 pgs) | Order Granting Application for Pro Hac Vice Admission of Matthew M. Burke (Related Doc # 18) signed on 9/29/2020 (White, Greg) (Entered: 09/29/2020) |
| 09/29/2020 | 🌐25 (5 pgs) | Notice of Appearance in Adversary Proceeding filed by Cynthia Louise Bernstiel on behalf of Evanstan Insurance Co.. (Bernstiel, Cynthia) (Entered: 09/29/2020) |
| 09/30/2020 | 🌐26 (5 pgs) | Notice of Appearance in Adversary Proceeding filed by Kevin Buckley on behalf of Great American Fidelity Insurance Co. (Buckley, Kevin) (Entered: 09/30/2020) |
| 09/30/2020 | 🌐27 (5 pgs) | Notice of Appearance in Adversary Proceeding filed by Tyler William Flynn on behalf of Great American Fidelity Insurance Co. (Flynn, Tyler) (Entered: 09/30/2020) |

| 09/30/2020 | ⊜ 28 (5 pgs) | Statement *Bankruptcy Rule 9027(e)(3)* filed by Kevin Buckley on behalf of Great American Fidelity Insurance Co. (Buckley, Kevin) (Entered: 09/30/2020) |
|---|---|---|
| 10/01/2020 | ⊜ 29 (36 pgs) | Answer to Complaint (Related Doc # []) filed by Cynthia Louise Bernstiel on behalf of Evanstan Insurance Co.. (Bernstiel, Cynthia) (Entered: 10/01/2020) |
| 10/01/2020 | ⊜ 48 (57 pgs) | Transcript regarding Hearing Held on 9/30/20 at 11:00 AM RE: Status Conference. Remote electronic access to the transcript is restricted until 12/30/2020. The transcript may be viewed at the Bankruptcy Court Clerks Office. [Transcription Service Agency: Veritext Legal Solutions.]. (See the Courts Website for contact information for the Transcription Service Agency.). Notice of Intent to Request Redaction Deadline Due By 10/8/2020. Statement of Redaction Request Due By 10/22/2020. Redacted Transcript Submission Due By 11/2/2020. Transcript access will be restricted through 12/30/2020. (Cales, Humberto) (Entered: 10/08/2020) |
| 10/02/2020 | ⊜ 30 (5 pgs) | Statement / *Demand of Certain Insurers for Trial by Jury* filed by Craig Goldblatt on behalf of Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/02/2020 | ⊜ 31 (5 pgs) | Notice of Appearance *and Request for Service of Papers* filed by Craig Goldblatt on behalf of QBE Specialty Insurance Company. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/02/2020 | ⊜ 32 (4 pgs) | Statement / *Demand of QBE Specialty Insurance Company for Trial by Jury* filed by Craig Goldblatt on behalf of QBE Specialty Insurance Company. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/02/2020 | ⊜ 33 (5 pgs) | Notice of Appearance *and Request for Service of Papers* filed by Craig Goldblatt on behalf of Evanstan Insurance Co.. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/02/2020 | ⊜ 34 (4 pgs) | Statement / *Demand of Evanston Insurance Company for Trial by Jury* filed by Craig Goldblatt on behalf of Evanstan Insurance Co.. (Goldblatt, Craig) (Entered: 10/02/2020) |

https://nysb-ecf.sso.dcn/cgi-bin/DktRpt.pl?595342909060208-L_1_0-1

| | | |
|---|---|---|
| 10/02/2020 | 🌐 35 (4 pgs) | Statement / *Rule 9027(e)(3) Statement of Evanston Insurance Company* filed by Craig Goldblatt on behalf of Evanstan Insurance Co.. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/02/2020 | 🌐 36 (4 pgs) | Corporate Ownership Statement / *Rule 7007.1 Corporate Disclosure Statement of Evanston Insurance Company*. Corporate parents added to case: Markel Corporation. Filed by Craig Goldblatt on behalf of Evanstan Insurance Co.. (Goldblatt, Craig) (Entered: 10/02/2020) |
| 10/05/2020 | 🌐 37 (5 pgs) | Notice of Appearance filed by Joanna L. Young on behalf of Axis Surplus Lines Insurance Co.. (Young, Joanna) (Entered: 10/05/2020) |
| 10/05/2020 | 🌐 38 (5 pgs) | Notice of Appearance *of Kristin V. Gallagher* filed by Joanna L. Young on behalf of Axis Surplus Lines Insurance Co.. (Young, Joanna) (Entered: 10/05/2020) |
| 10/05/2020 | 🌐 39 (4 pgs) | Statement /*Demand of AXIS Surplus Insurance Company for Trial by Jury* filed by Joanna L. Young on behalf of Axis Surplus Lines Insurance Co.. (Young, Joanna) (Entered: 10/05/2020) |
| 10/05/2020 | 🌐 40 (5 pgs) | Statement /*Rule 9027(e)(3) Statement of AXIS Surplus Insurance Company* filed by Joanna L. Young on behalf of Axis Surplus Lines Insurance Co.. (Young, Joanna) (Entered: 10/05/2020) |
| 10/06/2020 | 🌐 41 (4 pgs) | Application for Pro Hac Vice Admission *of George McClellan, Esq.* filed by Craig Goldblatt on behalf of Evanston Insurance Company. (Goldblatt, Craig) (Entered: 10/06/2020) |
| 10/06/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14403853. Fee amount 200.00. (Re: Doc # 41) (U.S. Treasury) (Entered: 10/06/2020) |
| 10/06/2020 | 🌐 42 (4 pgs) | Application for Pro Hac Vice Admission *of Shannon OMalley, Esq.* filed by Craig Goldblatt on behalf of QBE Specialty Insurance Company. (Goldblatt, Craig) (Entered: 10/06/2020) |
| 10/06/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14403889. Fee amount 200.00. (Re: Doc # 42) (U.S. Treasury) (Entered: 10/06/2020) |

| | | |
|---|---|---|
| 10/06/2020 | 🔍 43<br>(4 pgs) | Application for Pro Hac Vice Admission *of Paige Tackett, Esq.* filed by Craig Goldblatt on behalf of QBE Specialty Insurance Company. (Goldblatt, Craig) (Entered: 10/06/2020) |
| 10/06/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14403907. Fee amount 200.00. (Re: Doc # 43) (U.S. Treasury) (Entered: 10/06/2020) |
| 10/06/2020 | 🔍 44<br>(2 pgs) | Order Granting Application for Pro Hac Vice Admission of George McClellan (Related Doc # 41) signed on 10/6/2020 (White, Greg) (Entered: 10/06/2020) |
| 10/06/2020 | 🔍 45<br>(2 pgs) | Order Granting Application for Pro Hac Vice Admission of Shannon O'Malley (Related Doc # 42) signed on 10/6/2020 (White, Greg) (Entered: 10/06/2020) |
| 10/06/2020 | 🔍 46<br>(2 pgs) | Order Granting Application for Pro Hac Vice Admission of Paige Tackett (Related Doc # 43) signed on 10/6/2020 (White, Greg) (Entered: 10/06/2020) |
| 10/08/2020 | 🔍 47<br>(77 pgs; 2 docs) | **(Incorrect PDF File Submitted)** Amended Answer to Complaint (related document(s)29) filed by Cynthia Louise Bernstiel on behalf of Evanstan Insurance Co.. (Attachments: # 1 Exhibit A - Policy)(Bernstiel, Cynthia) Modified on 10/8/2020 (Richards, Beverly). (Entered: 10/08/2020) |
| 10/09/2020 | 🔍 49<br>(76 pgs; 2 docs) | **(This Entry Has Been Refiled. See Document #67 For The Correct Entry)** Amended Answer to Complaint (related document(s)29) filed by Cynthia Louise Bernstiel on behalf of Evanstan Insurance Co.. (Attachments: # 1 Exhibit A)(Bernstiel, Cynthia) Modified on 11/4/2020 (Richards, Beverly). (Entered: 10/09/2020) |
| 10/09/2020 | 🔍 50<br>(4 pgs) | Corporate Ownership Statement . Corporate parents added to case: QBE Holdings, Inc.. Filed by Craig Goldblatt on behalf of QBE Specialty Insurance Company. (Goldblatt, Craig) (Entered: 10/09/2020) |
| 10/13/2020 | 🔍 51<br>(3 pgs) | Notice of Appearance in Adversary Proceeding filed by John E. Jureller Jr. on behalf of 173 Bway Blue LLC, 262 Mott Blue TIC LLC, 28 Newbury JSRE TIC LLC, 315 Seventh Retail LLC, 444 86 Blue LLC, 66 Pearl Retail II, LLC, 66 Pearl Retail ISG, LLC, 66 Pearl Retail, LLC, Century 21 Inc., IRaymond-77 Warren LLC, Miami DD 101 Blue LLC, Sabra Associates LLC, Star of David, True Blue Associates LLC, Webway Axxociates LLC. |

https://nysb-ecf.sso.dcn/cgi-bin/DktRpt.pl?595342909060208-L_1_0-1

| | | |
|---|---|---|
| | | (Jureller, John) (Entered: 10/13/2020) |
| 10/13/2020 | ◉ 52<br>(3 pgs) | Notice of Hearing / *Notice of Telephonic Status Conference* filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. with hearing to be held on 10/14/2020 at 03:00 PM at Teleconference Line (CourtSolutions) (SCC) (Kweskin, Lucy) (Entered: 10/13/2020) |
| 10/14/2020 | ◉ 53<br>(7 pgs) | Affidavit of Service *re: Notice of Telephonic Status Conference (Docket No. 52)* (related document(s)52) filed by Stretto.(Klamser, Robert) (Entered: 10/14/2020) |
| 10/16/2020 | ◉ 54<br>(5 pgs) | Case Management and Scheduling Order signed on 10/16/2020 (White, Greg) (Entered: 10/16/2020) |
| 10/16/2020 | ◉ 55<br>(41 pgs) | Answer to Complaint (Related Doc # []) filed by Kevin Buckley on behalf of Great American Fidelity Insurance Co. (Buckley, Kevin) (Entered: 10/16/2020) |
| 10/16/2020 | ◉ 56<br>(4 pgs) | Corporate Ownership Statement . Corporate parents added to case: American Financial Group, Inc., Great American Insurance Company. Filed by Kevin Buckley on behalf of Great American Fidelity Insurance Co. (Buckley, Kevin) (Entered: 10/16/2020) |
| 10/16/2020 | ◉ 57<br>(4 pgs) | Statement *Demand for Trial by Jury* filed by Kevin Buckley on behalf of Great American Fidelity Insurance Co. (Buckley, Kevin) (Entered: 10/16/2020) |
| 10/19/2020 | ◉ 66<br>(39 pgs) | Transcript regarding Hearing Held on 10/14/20 at 10:04 AM RE: Status Conference. Remote electronic access to the transcript is restricted until 1/19/2021. The transcript may be viewed at the Bankruptcy Court Clerks Office. [Transcription Service Agency: Veritext Legal Solutions.]. (See the Courts Website for contact information for the Transcription Service Agency.). Notice of Intent to Request Redaction Deadline Due By 10/26/2020. Statement of Redaction Request Due By 11/9/2020. Redacted Transcript Submission Due By 11/19/2020. Transcript access will be restricted through 1/19/2021. (Cales, Humberto) (Entered: 11/02/2020) |
| 10/21/2020 | ◉ 58<br>(5 pgs) | Notice of Appearance *and Request for Service of Papers* filed by Craig Goldblatt on behalf of Endurance American Specialty Insurance Co.. (Goldblatt, Craig) (Entered: 10/21/2020) |

| | | |
|---|---|---|
| 10/21/2020 | ❍ 59<br>(4 pgs) | Corporate Ownership Statement . Corporate parents added to case: Endurance American Insurance Company. Filed by Craig Goldblatt on behalf of Endurance American Specialty Insurance Co.. (Goldblatt, Craig) (Entered: 10/21/2020) |
| 10/21/2020 | ❍ 60<br>(41 pgs; 2 docs) | Memorandum of Law / *Defendants' Motion to Remand* filed by Craig Goldblatt on behalf of Allianz Global Risks US Insurance Co., Axis Surplus Lines Insurance Co., Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Endurance American Specialty Insurance Co., Evanston Insurance Company, Great American Fidelity Insurance Co, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., QBE Specialty Insurance Company, Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Attachments: # 1 Exhibit A: Proposed Order) (Goldblatt, Craig) (Entered: 10/21/2020) |
| 10/21/2020 | ❍ 61<br>(11 pgs; 3 docs) | Declaration *of Craig Goldblatt in Support of Defendants' Motion to Remand* filed by Craig Goldblatt on behalf of Allianz Global Risks US Insurance Co., Axis Surplus Lines Insurance Co., Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Endurance American Specialty Insurance Co., Evanston Insurance Company, Great American Fidelity Insurance Co, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., QBE Specialty Insurance Company, Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. (Attachments: # 1 Exhibit A # 2 Exhibit B) (Goldblatt, Craig) (Entered: 10/21/2020) |
| 10/22/2020 | ❍ 62<br>(5 pgs) | Notice of Appearance in Adversary Proceeding *of Lowenstein Sander LLP* filed by Jeffrey L. Cohen on behalf of Official Committee of Unsecured Creditors of Century 21 Department Stores LLC, et al.. (Cohen, Jeffrey) (Entered: 10/22/2020) |
| 10/22/2020 | ❍ 63<br>(8 pgs) | Notice of Hearing *on Defendants' Motion to Remand* (related document(s)60, 61) filed by Craig Goldblatt on behalf of Allianz Global Risks US Insurance Co., Axis Surplus Lines Insurance Co., Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Endurance American Specialty Insurance Co., Evanston Insurance Company, Great American Fidelity Insurance Co, Landmark American Insurance Co., Liberty Mutual Fire Insurance |

| | | |
|---|---|---|
| | | Co., QBE Specialty Insurance Company, Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. with hearing to be held on 12/16/2020 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) Objections due by 11/9/2020, (Goldblatt, Craig) (Entered: 10/22/2020) |
| 10/30/2020 | 64 (7 pgs; 2 docs) | Application for Pro Hac Vice Admission *of Marc E. Rosenthal* filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. (Attachments: # 1 Exhibit A) (Kweskin, Lucy) (Entered: 10/30/2020) |
| 10/30/2020 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14502985. Fee amount 200.00. (Re: Doc # 64) (U.S. Treasury) (Entered: 10/30/2020) |
| 11/02/2020 | 65 (3 pgs) | Order Granting Application for Pro Hac Vice Admission of Marc E. Rosenthal (Related Doc # 64) signed on 11/2/2020 (White, Greg) (Entered: 11/02/2020) |
| 11/04/2020 | 67 (97 pgs; 2 docs) | Amended Answer to Complaint filed by Cynthia Louise Bernstiel on behalf of Evanstan Insurance Co.. (Attachments: # 1 Exhibit A)(Bernstiel, Cynthia) (Entered: 11/04/2020) |
| 11/09/2020 | 68 (37 pgs) | Opposition *to Defendants' Motion to Remand* (related document(s)60) filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. (Kweskin, Lucy) (Entered: 11/09/2020) |
| 11/09/2020 | 69 (5 pgs) | Opposition */ Joinder of the Official Committee of Unsecured Creditors to Debtors Opposition to Defendants Motion to Remand* (related document(s)68, 60) filed by Jeffrey L. Cohen on behalf of Official Committee of Unsecured Creditors of Century 21 Department Stores LLC, et al.. (Cohen, Jeffrey) (Entered: 11/09/2020) |
| 11/11/2020 | 70 (7 pgs) | Affidavit of Service *re: Opposition to Defendants Motion to Remand (Docket No. 68)* (related document(s)68) filed by Stretto.(Klamser, Robert) (Entered: 11/11/2020) |
| 11/23/2020 | 71 (38 pgs) | Response */ Defendants' Reply in Further Support of Remand* (related document(s)63, 68, 60, 69, 61) filed by Craig Goldblatt on behalf of Allianz Global Risks US Insurance Co., Axis Surplus Lines Insurance Co., Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Endurance American Specialty Insurance Co., Evanston Insurance |

| | | |
|---|---|---|
| | | Company, Great American Fidelity Insurance Co, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., QBE Specialty Insurance Company, Starr Surplus Lines Insurance C0., Steadfast Insurance Co.. with hearing to be held on 12/16/2020 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) (Goldblatt, Craig) (Entered: 11/23/2020) |
| 12/07/2020 | 🌐 72 (24 pgs) | Notice of Proposed Order / *Proposed Confidentiality Agreement and Stipulated Protective Order* filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. (Kweskin, Lucy) (Entered: 12/07/2020) |
| 12/10/2020 | 🌐 73 (5 pgs) | Notice of Appearance *and Request for Service of Papers* filed by Philip D. Anker on behalf of Starr Surplus Lines Insurance Co., Certain Underwriters At Lloyds Subscribing To Policy Nos. PG1902704, PG1902346, PG1902696, PG1902698, PG1902707, PG1902702, and PG1902712, Endurance American Specialty Insurance Co., Evanston Insurance Company, Landmark American Insurance Co., Liberty Mutual Fire Insurance Co., QBE Specialty Insurance Company, Steadfast Insurance Co.. (Anker, Philip) (Entered: 12/10/2020) |
| 12/11/2020 | 🌐 74 (24 pgs) | So Ordered Confidentiality Agreement and Stipulated Protective Order signed on 12/11/2020 (White, Greg) (Entered: 12/11/2020) |
| 12/14/2020 | 🌐 75 (8 pgs) | Affidavit of Service re: *Confidentiality Agreement and Stipulated Protective Order (Docket No. 72)* (related document(s)72) filed by Stretto.(Klamser, Robert) (Entered: 12/14/2020) |
| 12/15/2020 | 🌐 76 (3 pgs) | Notice of Agenda *for Telephonic Hearing on Matters Scheduled for December 16, 2020* Filed by Lucy Kweskin on behalf of Century 21 Department Stores LLC. with hearing to be held on 12/16/2020 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) (Kweskin, Lucy) (Entered: 12/15/2020) |
| 12/15/2020 | 🌐 77 (6 pgs) | Affidavit of Service re: *Notice of Agenda for Telephonic Hearing on Matters Scheduled for December 16, 2020 (Docket No. 76)* (related document(s)76) filed by Stretto. (Klamser, Robert) (Entered: 12/15/2020) |
| 12/28/2020 | 🌐 78 (35 pgs) | Transcript regarding Hearing Held on 12/16/20 at 9:59 AM RE: Defendants Motion to Remand filed by Craig Goldblatt. Remote electronic access to the transcript is restricted until 3/29/2021. The transcript may be viewed at the Bankruptcy Court Clerks Office. [Transcription |

Case 1:20-cv-07437-LGS   Document 32   Filed 04/27/21   Page 26 of 110

| | | |
|---|---|---|
| | | Service Agency: Veritext Legal Solutions.]. (See the Courts Website for contact information for the Transcription Service Agency.) (RE: related document(s) 60). Notice of Intent to Request Redaction Deadline Due By 1/4/2021. Statement of Redaction Request Due By 1/19/2021. Redacted Transcript Submission Due By 1/28/2021. Transcript access will be restricted through 3/29/2021. (Cales, Humberto) (Entered: 01/05/2021) |
| 01/12/2021 | ◑ 79 (4 pgs) | Application for Pro Hac Vice Admission *of Nicole Kozlowski* filed by Michael D. Hynes on behalf of Allianz Global Risks US Insurance Co.. (Hynes, Michael) (Entered: 01/12/2021) |
| 01/12/2021 | | Receipt of Application for Pro Hac Vice Admission( 20-01222-scc) [motion,122] ( 200.00) Filing Fee. Receipt number A14855166. Fee amount 200.00. (Re: Doc # 79) (U.S. Treasury) (Entered: 01/12/2021) |
| 01/13/2021 | ◑ 80 (2 pgs) | Order Granting Application for Pro Hac Vice Admission of Nicole Kozlowski (Related Doc # 79) signed on 1/13/2021 (White, Greg) (Entered: 01/13/2021) |
| 01/29/2021 | ◑ 81 (27 pgs) | First Motion to Compel *Documents/Information* filed by Dennis T D'Antonio on behalf of 173 Bway Blue LLC, 262 Mott Blue TIC LLC, 28 Newbury JSRE TIC LLC, 315 Seventh Retail LLC, 444 86 Blue LLC, 66 Pearl Retail II, LLC, 66 Pearl Retail ISG, LLC, 66 Pearl Retail, LLC, Century 21 Department Stores LLC, Century 21 Inc., IRaymond-77 Warren LLC, Miami DD 101 Blue LLC, Sabra Associates LLC, Star of David, True Blue Associates LLC, Webway Axxociates LLC. (D'Antonio, Dennis) (Entered: 01/29/2021) |
| 01/29/2021 | ◑ 82 (495 pgs; 16 docs) | First Declaration *of Dennis D'Antonio in Support of Plaintiffs' Motion to Compel* (related document(s)81) filed by Dennis T D'Antonio on behalf of 173 Bway Blue LLC, 262 Mott Blue TIC LLC, 28 Newbury JSRE TIC LLC, 315 Seventh Retail LLC, 444 86 Blue LLC, 66 Pearl Retail II, LLC, 66 Pearl Retail ISG, LLC, 66 Pearl Retail, LLC, Century 21 Department Stores LLC, Century 21 Inc., IRaymond-77 Warren LLC, Miami DD 101 Blue LLC, Sabra Associates LLC, Star of David, True Blue Associates LLC, Webway Axxociates LLC. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit O # 15 Exhibit P) (D'Antonio, Dennis) (Entered: 01/29/2021) |

| | | |
|---|---|---|
| 01/29/2021 | ☉ 83<br>(4 pgs) | First Declaration *of Dennis D'Antonio in Good Faith* (related document(s)81) filed by Dennis T D'Antonio on behalf of 173 Bway Blue LLC, 262 Mott Blue TIC LLC, 28 Newbury JSRE TIC LLC, 315 Seventh Retail LLC, 444 86 Blue LLC, 66 Pearl Retail II, LLC, 66 Pearl Retail ISG, LLC, 66 Pearl Retail, LLC, Century 21 Department Stores LLC, Century 21 Inc., IRaymond-77 Warren LLC, Miami DD 101 Blue LLC, Sabra Associates LLC, Star of David, True Blue Associates LLC, Webway Axxociates LLC. (D'Antonio, Dennis) (Entered: 01/29/2021) |
| 01/29/2021 | ☉ 84<br>(50 pgs; 2 docs) | Motion to Compel filed by Michael D. Hynes on behalf of Allianz Global Risks US Insurance Co.. (Attachments: # 1 Exhibit A) (Hynes, Michael) (Entered: 01/29/2021) |
| 01/29/2021 | ☉ 85<br>(252 pgs; 9 docs) | Declaration *of Michael Hynes* (related document(s)84) filed by Michael D. Hynes on behalf of Allianz Global Risks US Insurance Co.. (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8) (Hynes, Michael) (Entered: 01/29/2021) |
| 02/04/2021 | ☉ 86<br>(4 pgs) | Amended Notice of Hearing filed by Michael D. Hynes on behalf of Allianz Global Risks US Insurance Co.. (Hynes, Michael) (Entered: 02/04/2021) |
| 02/04/2021 | ☉ 87<br>(3 pgs) | Notice of Hearing / *Notice of Telephonic Status Conference* filed by Matthew Skrzynski on behalf of Century 21 Department Stores LLC. with hearing to be held on 2/12/2021 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) (Skrzynski, Matthew) (Entered: 02/04/2021) |
| 02/05/2021 | ☉ 88<br>(8 pgs) | Affidavit of Service *re: Notice of Telephonic Status Conference (Docket No. 87)* (related document(s)87) filed by Stretto.(Klamser, Robert) (Entered: 02/05/2021) |
| 02/11/2021 | ☉ 89<br>(4 pgs) | Notice of Agenda *for Telephonic Hearing on Matters Scheduled for February 12, 2021* filed by Matthew Skrzynski on behalf of Century 21 Department Stores LLC. with hearing to be held on 2/12/2021 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) (Skrzynski, Matthew) (Entered: 02/11/2021) |
| 02/11/2021 | ☉ 90<br>(6 pgs) | Affidavit of Service *re: Notice of Agenda for Telephonic Hearing on Matters Scheduled for February 12, 2021 (Docket No. 89)* (related document(s)89) filed by Stretto. (Klamser, Robert) (Entered: 02/11/2021) |

| | | |
|---|---|---|
| 02/12/2021 | ◑ 91 <br> (4 pgs) | Amended Notice of Agenda / *Amended Notice of Agenda for Telephonic Hearing on Matters Scheduled for February 12, 2021* filed by Matthew Skrzynski on behalf of Century 21 Department Stores LLC. with hearing to be held on 2/12/2021 at 10:00 AM at Teleconference Line (CourtSolutions) (SCC) (Skrzynski, Matthew) (Entered: 02/12/2021) |
| 02/18/2021 | ◑ 92 <br> (83 pgs; 2 docs) | Order Granting Defendants' Motion to Remand signed on 2/18/2021 (related document(s)60) (White, Greg) (Entered: 02/18/2021) |
| 02/18/2021 | ◑ 93 <br> (4 pgs) | Affidavit of Service *re: Amended Notice of Agenda for Telephonic Hearing on Matters Scheduled for February 12, 2021 (Docket No. 91)* (related document(s)91) filed by Stretto.(Klamser, Robert) (Entered: 02/18/2021) |
| 03/23/2021 | ◑ 94 <br> (2 pgs) | Letter *Re: remanding adversary proceeding* (related document(s)92) Filed by Clerk's Office, U.S. Bankruptcy Court. (Lopez, Mary) (Entered: 03/23/2021) |

I HEREBY ATTEST AND CERTIFY ON April 22, 2021
THAT THIS DOCUMENT IS A FULL, TRUE AND CORRECT
COPY OF THE ORIGINAL FILED ON OUR COURT'S
ELECTRONIC CASE FILING SYSTEM.

CLERK, US BANKRUPTCY COURT, SDNY

BY: _Karen McCappiello_ DEPUTY CLERK



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 20-12097-scc

4   Adv. Case No. 20-01222-scc

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   CENTURY 21 DEPARTMENT STORES LLC,

9

10          Debtor.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12  CENTURY 21 DEPARTMENT STORES LLC, et al.,

13              Plaintiffs,

14          v.

15  STARR SURPLUS LINES INSURANCE CO., et al.,

16              Defendants.

17  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

Page 2

1                      United States Bankruptcy Court

2                      One Bowling Green

3                      New York, NY   10004

4

5                      February 12, 2021

6                      10:00 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 3

1    HEARING re Doc #469 First Interim Fee Application of

2    Proskauer Rose LLP, as Counsel to the Debtors

3

4    HEARING re Doc #468 First Interim Application of Stretto for

5    Allowance of Compensation

6

7    HEARING re Doc #462 Application for Interim Professional

8    Compensation for Lowenstein Sandler LLP, Creditor Comm Aty

9

10   HEARING re Doc #513 First Interim Fee Application Of

11   AlixPartners, LLP, Financial Advisor To The Official

12   Committee of Unsecured Creditors

13

14   HEARING re Doc #226 Acro Display LLCs Motion for Allowance

15   and Payment of Administrative Expense

16

17   HEARING re Adversary proceedings: 20-01222-scc Century 21

18   Department Stores LLC et al. v. Starr Surplus Lines

19   Insurance CO. et al. Status Conference

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   PROSKAUER ROSE LLP

4        Attorneys for the Debtor

5        Eleven Times Square

6        New York, NY 10036

7

8   BY:  MATTHEW SKRYNSKI (TELEPHONICALLY)

9        PETER YOUNG (TELEPHONICALLY)

10

11   UNITED STATES DEPARTMENT OF JUSTICE

12        Attorneys for the U.S. Trustee

13        201 Varick Street, Suite 1006

14        New York, NY 10014

15

16   BY:  ANDREA SCHWARTZ (TELEPHONICALLY)

17

18   WHITE and WILLIAMS LLP

19        Attorneys for Acro Display LLC

20        7 Times Square

21        New York, NY 10036

22

23   BY:  JAMES VANDERMARK (TELEPHONICALLY)

24

25

Page 5

1    WILMER, CUTLER, PICKERING, HALE & DORR LLP

2        Attorneys for Starr Surplus Lines Insurance Co., et al.

3        7 World Trade Center, 250 Greenwich Street

4        New York, NY 10007

5

6    BY:  PHILIP ANKER (TELEPHONICALLY)

7

8    LOWENSTEIN SANDLER LLP

9        Attorneys for Official Committee of Unsecured Creditors

10       One Lowenstein Drive

11       Roseland, NJ 07068

12

13   BY:  BRENT WEISENBERG (TELEPHONICALLY)

14

15   MORGAN, LEWIS & BOCKIUS LLP

16       Attorneys for JP Morgan Chase Bank, N.A.

17       One Federal Street

18       Boston, MA 02110

19

20   BY:  JULIA FROST-DAVIES (TELEPHONICALLY)

21

22   ALSO PRESENT TELEPHONICALLY:

23   DENISE MARTE

24   TRACY KLESTADT

25   BENJAMIN LOVELAND

Page 6

1    MATTHEW BURKE

2    DANIELE SALVATORE

3    LAUREN LIFLAND

4    CYNTHIA BERNSTIEL

5    NICOLE KOZLOWSKI

6    JEFF MARWIL

7    BRIAN CASHMAN

8    JEFFREY COHEN

9    ROBERT KLAMSER

10   KATHRYN MCGLYNN

11   DAVID RILEY

12   KAITLYN SUNDT

13   VLADIMIR JELISAVCIC

14   TAL SINGER

15   PAUL ADAMS

16   JOHN JURELLER

17   ISABELLA STANKOWSKI-BOOKER

18   JOANNA YOUNG

19   EZRA HUSNEY

20   DENNIS T. D'ANTONIO

21   WILLIAM COONEY

22   TYLER FLYNN

23   C. RUSSELL

24   MICHAEL HYNES

25

Page 7

1               P R O C E E D I N G S

2               THE COURT:  Good morning, everyone.  This is Judge

3   Chapman.  We're here this morning in the Century 21

4   Department Stores cases, Case No. 20-12907.  If everybody

5   could please keep your phones on mute until you speak, I

6   would appreciate it.  Thank you.

7               This hearing is being conducted entirely

8   telephonically via the Court Solutions platform and a

9   recording of the hearing is being made.  No private

10  recordings of the hearing are permitted.

11              I have a long roster of those who have registered

12  to participate this morning.  I appreciate that we have a

13  number of matters on the calendar this morning.  Please

14  identify yourself for the record when you speak and identify

15  the party on whose behalf you're appearing and please do so

16  each time that you speak so that we can create an accurate

17  record.

18              All right.  I did get an amended agenda sometime

19  recently, perhaps early this morning.  Who would like to

20  start from the Proskauer firm?

21              MR. SKRZYNSKI:  Good morning, Your Honor.  This is

22  Matthew Skrzynski of Proskauer Rose on behalf of the

23  Debtors.  That's correct, we sent over an amended agenda

24  this morning to Your Honor; it's found at Docket No. 632,

25  and it reflects updates to the status of discussions on

Page 8

1    applications.

2            THE COURT:  All right, very good.

3            MR. SKRZYNSKI:  Before we proceed -- great.

4            THE COURT:  Go ahead, go ahead.

5            MR. SKRZYNSKI:  Before we get to the agenda, just

6    by way of quick update.  As Your Honor may have seen, the

7    debtors filed a plan, a disclosure statement, and a motion

8    to approve solicitation procedures; those are Dockets 614,

9    615, and 616 respectively.

10           And if Your Honor is amenable to it, proposing to

11   begin with the agenda then at item 1, and after that,

12   counsel for the adversary proceeding can drop off.

13           THE COURT:  Partially okay, but I'm going to mix

14   it up a little bit.  I'd like to take the fee applications

15   first, so that those parties can drop off, particularly in

16   light of the fact that all outstanding issues on those have

17   been resolved.  So if could please start with the fee

18   applications and go through those quickly and then I can

19   have those parties drop off, and then I'll turn to the

20   adversary proceeding.

21           MR. SKRZYNSKI:  Sounds good.  Thank you, Your

22   Honor.  My colleague, Peter Young, will address the fee

23   applications.

24           THE COURT:  All right, thank you.  Good morning

25   Mr. Young.

Page 9

1          MR. YOUNG:  Good morning, Judge Chapman.  Hope

2     you're well.

3          I'm pleased to report, as Mr. Skrzynski said, that

4     each of the professionals subject to the order that we

5     delivered to chambers this morning, and that includes

6     Proskauer, Stretto, Lowenstein Sandler, and AlixPartners,

7     have reached agreements with the United States Trustee on

8     voluntary write-offs.  Those write-offs, Your Honor, are all

9     reflected, both in the numbers and in the footnotes that

10    appear on Schedule A, the official form from the Southern

11    District for approving fee applications.

12          And unless Your Honor has questions -- and I

13    believe, by the way, to Your Honor's point, that each of the

14    professionals is represented on the call -- we ask that you

15    enter the order approving the fees as reduced by the

16    agreement with the United States Trustees.

17          THE COURT:  In the interest of candor, I have not

18    had time to review the revised order that you submitted.  I

19    would be grateful if you could put on the record what the

20    new numbers are; hopefully, you have that at your

21    fingertips.

22          MR. YOUNG:  I do, Your Honor, and I'm happy to do

23    it.

24          THE COURT:  All right.

25          MR. YOUNG:  Your Honor, would you like me to --

Page 10

1          THE COURT:  You neglected to mention Weg & Myers.

2          MR. YOUNG:  Yes.  I'm sorry, Your Honor, I'm

3     getting a little feedback on the phone.  I didn't hear the

4     question.

5          THE COURT:  Yeah, I'm just trying to figure out

6     where that's coming from.  If everybody could please keep

7     your phones on mute, other than Mr. Young, that would be

8     great.  My question was about Weg & Myers.

9          MR. YOUNG:  Yeah.

10          THE COURT:  When you recited the fee applications,

11     you neglected to mention them.  That's before me today as

12     well, yes?

13          MR. YOUNG:  It is not, and I neglected

14     purposefully, Your Honor.  Weg & Myers will file its final

15     fee application any day now and set it for hearing.  As of

16     the December 30th closing on the insurance participation

17     interest sale, the fees and expenses of Weg & Myer are

18     picked up by the buyer of the insurance claim participation

19     interest, and Weg and Myer will no longer be engaged by the

20     estate.

21          And so, we'll submit a notice in connection with

22     their final fee application informing the Court and all

23     parties-in-interest in the case of that fact and seek

24     approval of final fees, but they will not be included as

25     interim fee application party.

Page 11

1          THE COURT:  Okay.  All right, great, that makes a

2    lot of sense.  So if you could just run through the other

3    four, I would be grateful.

4          MR. YOUNG:  Certainly, Your Honor, and in doing

5    that, would you like me just to run through what the write-

6    off amounts were or what the actual amounts were all across

7    the chart?

8          THE COURT:  Yeah, just if you could run up what

9    the write-off amounts were, and then I'm just going to ask

10   Ms. Schwartz to confirm that she's in agreement with what

11   you put on the record.

12         MR. YOUNG:  Oh, absolutely, absolutely.  Just one

13   moment, Your Honor, I'm happy to do that.  Okay.

14         As reflected on Schedule A in the order that we

15   submitted to chambers to resolve objections that the United

16   States Trustee raised informally: Stretto agreed to

17   voluntarily reduce its fees in the amount of $645; Proskauer

18   agreed to voluntarily reduce its fees in the amount of

19   $43,656.61, and also its expenses in the amount of

20   $1,216.80; Lowenstein Sandler agreed to voluntarily reduce

21   its fees in the amount of $27,000 even; and AlixPartners

22   agreed to voluntarily reduce its fees in the amount of

23   $33,518 even.

24         Those are the aggregate write-offs, Your Honor.

25         THE COURT:  All right, thank you very much.  And

Page 12

1    Ms. Schwartz, are you there?

2              MS. SCHWARTZ:  Yes.  Good morning, Your Honor.

3    Andrea Schwartz --

4              THE COURT:  Good morning.

5              MS. SCHWARTZ:  -- the United States Trustee.  Your

6    Honor, those numbers are correct.  All of the professionals

7    took our comments very seriously, and we agree with the

8    proposed reductions and they resolve all of our informal

9    objections.

10             THE COURT:  All right, thank you so much.  All

11   right, and thank you, Ms. Schwartz, as always for handling

12   these matters so efficiently.  If no one else wishes to be

13   heard, I've reviewed the applications, the reductions sound

14   fine to me.  After we conclude this hearing, I'll take a

15   look at the revised order and we'll get it on the docket by

16   the end of today.

17             All right, thank you very much for that.

18             MR. YOUNG:  Thank you, Your Honor.

19             THE COURT:  And next up -- and I encourage

20   everybody to get a cup of coffee if you would like to get a

21   fresh one -- I'm going to read you a bench decision on the

22   insurer's motion to remand.  Fair warning, it's going to

23   take a little while, and I'm going to get started.

24             All right.  Before the Court is a motion to remand

25   filed by the defendants in Adversary Proceeding No. 20-1222

Page 13

1    collectively the defendants or the insurers.

2         By the motion, the defendants request that this

3    Court, one, abstain from hearing the adversary proceeding as

4    required by 28 U.S.C. Section 1334(c)(2); or, two, in the

5    alternative, (a) abstain from hearing the adversary

6    proceeding as permitted by 28 U.S.C. Section 1334(c)(1) or

7    (b), or (b) equitably remand the adversary proceeding to the

8    Supreme Court of the State of New York for the County of New

9    York, the State Court, pursuant to 28 U.S.C. Section

10   1452(b).

11        Century 21 Department Stores, LLC, or the debtor,

12   together with certain of its non-debtor affiliate plaintiffs

13   in the action, and joined by the Official Committee of

14   Unsecured Creditors, objects to the motion.

15        The Court has considered the motion, the

16   declaration filed in support of the motion, the debtors'

17   objection, the committee's joinder, the defendants' reply,

18   and the arguments of counsel at the hearing held before this

19   Court on December 16th, 2020.

20        In the interest of giving you a disposition today

21   without the additional passage of time, I'm going to read

22   this ruling into the record, but I do retain my right to

23   issue a more formal written decision if that should be

24   appropriate subsequent to delivering this bench decision.

25        First, let me turn to the background of this

Page 14

1    adversary.  While the Court assumes familiarity with the

2    background of these Chapter 11 cases and with this adversary

3    proceeding, the Court will provide a brief summary of

4    pertinent background facts for the purposes of this bench

5    ruling.

6            The debtor and several of its non-debtor

7    affiliates are named insured under various insurance

8    policies issued by the defendants.  The insurance policies,

9    inter alia, provided property damage-based business

10   interruption coverage for the period from August 1st, 2019

11   to August 1st, 2020 in the aggregate amount of up the $350

12   million, subject to the terms, conditions, limitations and

13   exclusions set forth in the insurance policies.

14           In mid-March 2020, with the onset of the COVID-19

15   pandemic and the various social distancing orders issued by

16   governmental authorities, the debtor closed its retail

17   locations.  The debtor states that it has suffered

18   tremendous losses as a result of the store closures and

19   alleges that the insurers have not honored their obligations

20   under the insurance policies.

21           On July 8th, 2020, Century 21 Department Stores,

22   LLC and the other plaintiffs filed a Complaint against the

23   insurers in the State Court, hereinafter the insurance

24   actions, alleging that the insurers breached the relevant

25   insurance policies by failing to compensate the plaintiffs

Page 15

1    for business losses sustained due to the effects of the

2    COVID-19 pandemic between March 2020 and May 31st, 2020.

3    Pursuant to the insurance action, the plaintiffs seek some

4    $175 million in damages.

5           The debtor and certain of its affiliates filed

6    voluntary petitions for relief under Chapter 11 of the

7    Bankruptcy Code on September 10th, 2020.  On September 11th,

8    2020, the debtor removed the insurance action from the State

9    Court State Court to the United States District Court for

10   the Southern District of New York, after which it was

11   transferred to this Court pursuant to the District Court's

12   standing order of reference.

13          Next, I will provide a summary of the arguments

14   that the parties to the adversary proceeding have advanced.

15   The debtor -- the defendants argue that the insurance action

16   is a prepetition contractual dispute, which should be

17   remanded back to the State Court where the action was filed

18   in July 2020 prior to the petition date.  Specifically, the

19   defendants argue that mandatory extension applies here

20   because all of the elements of the statutory test have been

21   met; essentially, that the action is based on non-core state

22   law claims that can be timely adjudicated in the State

23   Court.

24          Alternatively, defendants submit that even if the

25   Court is not required to abstain from hearing the insuran

Page 16

1    action, this Court should nonetheless elect to abstain or

2    equitably remand the action back to the State Court pursuant

3    to Section 1334(c)(1) or Section 1452(b) of Title 28, based

4    on the same factors that compel mandatory abstention, as

5    well as the predominance of state law issues in the

6    insurance action and its, quote/unquote, "tenuous at best

7    connection to the debtors' Chapter 11 case."

8          The debtor and the non-debtor plaintiffs oppose

9    the motion.  They argue that mandatory abstention is not

10   required, and that permissive abstention is not warranted.

11   With respect to mandatory abstention, they assert that the

12   insurance action is a core proceeding which renders

13   mandatory extension inapplicable.  Even assuming the

14   insurance action is not a core proceedings, plaintiffs argue

15   that the State Court cannot timely adjudicate the insurance

16   action in conjunction with the administration of the

17   debtors' bankruptcy estates in this Court, and as such,

18   mandatory extension would be improper.

19         With respect to permissive abstention, the

20   plaintiffs argue that it is, quote/unquote, "undeniable that

21   this Court is more competent to adjudicate the insurance

22   flaw issues presented and that the State Court has no

23   advantage over this Court since the State Court has not yet

24   determined which state's laws apply to the claims in the

25   insurance action."  Plaintiffs request that the motion be

Page 17

1    denied, and that the insurance action remain before this

2    Court.

3              I'll now go through the law with respect to

4    mandatory abstention.  Pursuant to Section 1334(c)(2) of

5    Title 28, Bankruptcy Courts must abstain from hearing an

6    action when, quote: (1) the motion to abstain was timely;

7    (2) the action is based on a state law claim; (3) the action

8    is related to but not arising in a bankruptcy case or

9    arising under the Bankruptcy Code; (4) Section 1334 provides

10   the sole basis for federal jurisdiction; (5) the action is

11   commenced in State Court; and (6) the action can be timely

12   adjudicated in State Court.  See 28 U.S.C. Section

13   1334(c)(2), In re. AOG Entertainment, Inc., 569 B.R. 563 at

14   572 (Bankr. S.D.N.Y. 2017).

15             It is the opposing party's burden to show that

16   mandatory abstention should not apply.  See Multibank, Inc.

17   v. Access Global Capital, LLC, 594 B.R. 618, 629 (Bankr.

18   S.D.N.Y. 2018).  Quote, "In determining whether to abstain,

19   if the Court finds that any element of the test has not been

20   satisfied, then it must find that mandatory abstention is

21   improper."  Smith v. McClesky, In re. Bay Vista of Virginia,

22   Inc., 394 B.R. 820 at 833 (Bankr. E.D. of Va. 2008).

23             Mandatory abstention, thus, is only required if

24   the Court finds that all six elements of Section 1334(c)(2)

25   are satisfied.  There is little disagreement among the

Page 18

1    parties regarding four of the six elements, specifically

2    that: (1) the motion to abstain was timely filed; (2) the

3    action is based on a state law claim; (3) Section 1334

4    provides the sole basis for federal jurisdiction; and (4)

5    the action was commenced in State Court.

6            Principally in dispute here are the third and

7    sixth elements of Section 1334(c)(2), to wit, whether the

8    action is related to but not arising in a bankruptcy case or

9    arising under the Bankruptcy Code, and whether the action

10   can be timely adjudicated in State Court.  Accordingly, if

11   the Court finds that, one, the insurance action is related

12   to but not arising in the debtors' bankruptcy case and the

13   insurance action can be timely adjudicated in the State

14   Court, then Section 1334(c)(2) by its terms requires the

15   Court to abstain from hearing the insurance action.

16           First, I will address the issue of whether the

17   insurance action is related to but not arising in the

18   bankruptcy case or arising under the Bankruptcy Code.

19           Section 157(b)(1) of Title 28 provides that,

20   quote, "Bankruptcy judges may hear and determine all cases

21   under Title 11 and all core proceedings arising under Title

22   11 or arising in a case under Title 11, referred under

23   subsection (a) of this section, and may enter appropriate

24   orders and judgments subject to review under Section 158

25   this title."

Page 19

1           Section 157 distinguishes core proceedings from

2    non-core proceedings, which the Bankruptcy Court may hear,

3    but for which the Bankruptcy Court is only empowered to

4    submit proposed findings of fact and conclusions of law to

5    the District Court for de novo review.   See Orion Pictures

6    Corporation v. Showtime Networks, In re. Orion Pictures

7    Corp., 4 F.3d 1095, 1100 to 1101, (2d Cir. 1993).

8           Abstention is only mandated with respect to non-

9    core matters, matters that are related to but do not arise

10   in a bankruptcy case or arise under the Bankruptcy Code.   In

11   re. Petrie Retail, 304 F.3d, 223 at 231 (2d Cir. 2002).

12          Section 157(b)(2) provides a non-exhaustive list

13   of core proceedings, including: (a) matters concerning the

14   administration of the estate; and (o) other proceedings

15   affecting the liquidation of the assets of the estate or the

16   adjustment of the debtor-creditor relationship.

17          In assessing whether an adversary proceeding

18   involved in a contract dispute is a core proceeding, Courts

19   consider: (1) whether the contract is antecedent to the

20   reorganization petition, and (2) the degree to which the

21   proceeding is independent of the reorganization.   In re. DPH

22   Holdings Corporation, 448 F.App'x 134 at 136 (2d Cir. 2011).

23   The Second Circuit has stated that a proceeding may be core

24   if the proceeding is, quote, "unique to or uniquely affected

25   by the bankruptcy proceeding," end quote, or the proceedi

Page 20

1    quote, "directly affects a core bankruptcy function," end

2    quote.  In re. Petrie Retail, 304 F.3d at 229.

3           The debtors argue that the insurance action is a

4    core proceeding because, quote, "proceeds of the insurance

5    action are the largest asset in the debtors' estates and an

6    integral part of any type of resolution of the debtors'

7    Chapter 11 cases."  The value of the insurance action is

8    crucial to a successful outcome in Chapter 11 cases since it

9    will pay the secured lenders' deficiency claims and provide

10   a portion of the recovery to the unsecured creditors.

11   Opposition brief at paragraph 24.

12          The insurers disagree stating that, quote, "The

13   mere assertion that an action would affect the ultimate size

14   of the estate does not establish core jurisdiction."  Motion

15   at paragraph 30, citing Orion Pictures v. Showtime Networks.

16   Specifically, the insurers submit that courts in this

17   district have repeatedly held that insurance coverage

18   disputes, such as the insurance action, are non-core

19   matters.  Opposition brief at paragraphs 28 to 31.

20          In Orion, the Second Circuit held that where the

21   outcome of a prepetition contract dispute would only augment

22   the assets of the estate for general distribution, the

23   effect on the administration of the estate was insufficient

24   to render the proceedings core.  Orion, 4 F.3d at 1102.

25   Stated differently, an action is not a core proceeding wh

Page 21

1    the action's only relationship to the bankruptcy case is

2    that a recovery in such action would result in augmentation

3    of the bankruptcy estate.   See Little Rest Twelve, Inc. v.

4    Visan, 458 B.R. 44 at 55 (S.D.N.Y. 2011).

5            The debtor and the committee argue that Orion is

6    distinguishable and that the Second Circuit's holding in

7    United States Lines v. American SS Owners' Mutual Protection

8    and Indemnity Association, In re. U.S. Lines, 197 F.3d 631

9    (2d Cir. 1999) supports a finding that, in circumstances

10   such as those present here, a dispute regarding a

11   prepetition insurance claim can be a core matter.

12           The insurers respond that the Second Circuit's

13   holding in U.S. Lines was a narrow one with facts readily

14   distinguishable from those here.   As such, they argue the

15   holding in U.S. Lines does not mandate a finding here that

16   the insurance action is a core proceeding.

17           The Court agrees with the insurers.   In U.S.

18   Lines, the Second Circuit determined that a dispute relating

19   to prepetition insurance contracts was a core proceeding,

20   nothing that, quote, "resolving disputes relating to major

21   insurance contracts are bound to have a significant impact

22   on the administration of the estate."   In re. U.S. Lines,

23   197 F.3d at 638.

24           In contrast to the interest case, however, U.S.

25   Lines involved a third-party indemnity policy where the

Page 22

1    insurance proceeds were, quote, "almost entirely earmarked

2    for paying the personal injury claimants and represented the

3    only potential source of cash available to that group of

4    creditors."  Id at 637.

5            The insurance policies at issue in U.S. Lines

6    contained so-called pay first provisions that conditioned

7    recovery on the policies on the allowance and payment of

8    personal injury claims by the debtors, which payment

9    required the use of estate funds.  The Second Circuit found

10   that under those circumstances, a declaratory judgment was

11   warranted in order to determine, among other things, when

12   the insurers' coverage obligations were triggered, and that

13   such determination was a core proceeding because it directly

14   impacted the Bankruptcy Court's core administrative function

15   of asset allocation among creditors.  Id at 638, 639.

16           Here, the insurance coverage at issue and the

17   related facts are entirely distinguishable from U.S. Lines

18   and do not involve issues of equitable distribution among

19   creditors.  Instead, any potential recovery in the insurance

20   action would only augment the debtors' estate for general

21   distribution.  Funds recovered are not earmarked for

22   specific creditors.

23           The Court finds that the insurance action falls

24   under the Court's related-to jurisdiction.  It is a

25   prepetition contract dispute that exists independent of the

Page 23

1   bankruptcy process.  The fact that some recovery in dispute

2   may flow to the bankruptcy estate is insufficient to render

3   it a core proceeding.  The insurance action, a state law

4   breach of contract claim, could have and indeed was asserted

5   outside of the bankruptcy case and neither arises in the

6   debtors' Chapter 11 case, nor arises under the Bankruptcy

7   Code.

8            In addition, developments in the debtors' Chapter

9   11 cases after the motion was fully briefed compel the

10  conclusion that resolution of the insurance action will have

11  even less of an impact on the administration of the debtors'

12  estates than originally argued by the debtor because the

13  debtor has monetized its claims against the insurers.

14           On December 11, 2020, the debtors filed a motion,

15  the sale motion, for an order authorizing and approving, (1)

16  the sale of the debtors' interest in the insurance action,

17  the sale, and (2) the settlement of claims by and between

18  the debtors and the committee on the one hand and certain of

19  the debtors' affiliates and equity holders, collectively

20  defined in the sale motion as the Gindi parties; see Docket

21  No. 324.

22           The sale motion was approved by this Court by

23  order dated December 28th, 2020.  The sale documents

24  memorializing the terms of the sale provide, inter alia,

25  the Gindi parties purchase of the debtors' interest in the

Page 24

1    insurance action for $59 million in cash, which amount the

2    Court understands has already been paid to the estate.  Only

3    if the outcome of the insurance action results in a total

4    recovery to the plaintiffs in excess of a $75 million

5    threshold will any additional recovery inure to the debtor,

6    and such amounts would only be 10 percent of any total

7    recovery over such threshold.

8           In support of their request for authority to enter

9    into the sale documents, the debtors stated, quote, "that

10    they continue to believe that a sale of the insurance action

11    now is in the best interest of the debtors' estates in that

12    it: (a) maximizes the value of a contingent asset; (b)

13    provides means to satisfy the ABL facility and other secured

14    debts in full; (c) provides means to satisfy Chapter 11

15    administrative expenses and priority claims in full; and (d)

16    provides an immediate and meaningful distribution to the

17    debtors' general unsecured creditors, while at the same

18    time, preserving their ability without risk to the debtors

19    to receive additional consideration through the proceeds

20    sharing if the proceeds of the insurance action exceed a

21    threshold."  Sale motion at paragraph 34.

22           Now that the Court has approved the sale, the bulk

23    of any recovery from the insurance action will inure to the

24    benefit of the non-debtors who own and control the action

25    going forward.  As such, the debtors' argument that the

1    insurance action is a core proceeding because resolution of

2    the insurance action would monetize the debtors' largest

3    asset, i.e., the insurance claim, and thus augment the

4    debtors' estates rings somewhat hollow.  Instead, the effect

5    on the administration of the debtors' estate, if any, will

6    be significant less than originally anticipated at the time

7    of removal of the insurance action to this Court and may

8    indeed be nothing at all.

9           During oral argument at the hearing on December

10   16th, 2020, in connection with the Court's approval of the

11   sale, debtors' counsel conceded that even assuming recovery

12   of the full proof of loss in the insurance action of $175

13   million and leaving aside interest and damages for the

14   alleged breach of the covenant of good faith, any additional

15   potential recovery to the debtors' estate would likely reach

16   a maximum of $10 million.  December 16th, 2020 hearing

17   transcript at page 20, lines 4 to 9.

18          Accordingly, because resolution of the insurance

19   action, a prepetition contract action, based on state law

20   and existing independent of the debtors' bankruptcy

21   proceedings would only increase the assets of the debtors'

22   estate for general distribution and does not implicate any

23   core bankruptcy function.

24          This Court finds that the insurance action is a

25   non-core proceeding over which this Court has related-to

Page 26

1    jurisdiction.

2         I'm going to pause for a moment.  I'm about two-

3    thirds of the way there.  I'll be back in a moment.

4         (Pause)

5         THE COURT:  Okay.  I'm going to continue.  Next,

6    the Court will address the issue of timely adjudication,

7    whether the insurance action can timely be adjudicated in

8    the State Court within the meaning of Section 1334(c)(2) of

9    Title 28.

10        In evaluating timely adjudication, Courts in this

11   circuit considering the following four factors as set forth

12   in Parmalat Capital Finance v. Bank of America, 639 F.3d 572

13   at 580 (2d Cir. 2011):  (1) the backlog of the State Court's

14   calendar relative to the Federal Court's calendar;  (2) the

15   complexity of the issues presented and the respective

16   expertise of each forum;  (3) the status of the relevant

17   bankruptcy proceeding;  and (4) whether the State Court

18   proceeding would prolong the administration of the estate.

19        Timeliness is informed, but not determined, by

20   speed.  The Second Circuit has held that the inquiry, quote,

21   "does not turn exclusively on whether an action could be

22   adjudicated most quickly in State Court.  It is, however,

23   informed by the comparative speeds of adjudication in the

24   federal and state forums."  Parmalat v. Bank of America,

25   F.3d at 266.

1          Similarly, the Third Circuit has held that, quote,

2    "The question is not whether the action will be more quickly

3    adjudicated in the Bankruptcy Court than in State Court, but

4    rather whether the action can be timely adjudicated in the

5    State Court."  In re. XI Technologies, 544 F.3d 196 at 218

6    (3d Cir. 2008).

7          The party opposing remand bears the burden of

8    demonstrating that the State Court cannot adjudicate the

9    claims in a timely manner.  See BGC Partners, Inc. v. Avison

10   Young (Canada) 919 F. Supp. 2d 310 at 319, Note 66 (S.D.N.Y.

11   2013).

12         The debtors argue that the State Court faces a

13   significantly larger backlog in its calendar relative to

14   this Court's calendar, and that remand of the insurance

15   action to the State Court would prolong the administration

16   of the debtors' estates.  The debtors emphasize the, quote,

17   "progress made in this Court over the past two months"

18   compared to the, quote, "inactivity during the prior two

19   months in the State Court and advocate for a one-stop-shop

20   resolution of the debtors' bankruptcy proceedings and the

21   insurance action in this Court."  Opposition brief at

22   paragraphs 47 and 53; December 16th, 2020 hearing

23   transcript, page 28, lines 2 to 6.

24         In contrast, the insurers argue that the debtors

25   emphasis on the faster forum is misplaced, and that the

Page 28

1    importance of whether the State Court can timely adjudicate

2    the action, quote, "is diminished in a liquidation

3    scenario," such as here, where there is, quote, "no

4    administrative urgency in play."  See insurers reply at

5    paragraph 40 to 42.

6           The Court has considered the Parmalat factors and

7    finds that: (1) the debtors have failed to demonstrate that

8    the State Court cannot timely adjudicate the insurance

9    action; and (2) the timeliness inquiry supports mandatory

10   abstention here.  As the insurers point out, timely

11   adjudication does not necessarily mean the faster forum.

12          The District Court has noted that a State Court

13   may be a timely forum even if it requires longer to

14   adjudicate an action than a Federal Court, as long as the

15   relevant bankruptcy proceedings will not be hindered by the

16   relative delay.  Post Investors, LLC v. Gribble, 2012 WL

17   4466619, *5 (S.D.N.Y. Sept. 27, 2012).

18          With respect to the relative background of State

19   and Federal Court calendars, the Court acknowledges that the

20   COVID-19 pandemic has presented uncertainty for both State

21   and Federal Courts, and the Court makes no finding regarding

22   which Court would more swiftly adjudicate the insurance

23   action.  While the debtors point to the activity in the

24   early months of the debtors' Chapter 11 cases, it bears

25   noting that the debtors fail to acknowledge the burgeoning

Page 29

1    docket of the Bankruptcy Court and make no assumption about

2    the ability of this Court to resolve the insurance action

3    with greater speed than the State Court.

4            With respect to the complexity of the issues

5    presented and the relative expertise of each forum, this

6    factor also does not weigh heavily because both this Court

7    and the State Court are fully capable of adjudicating the

8    state law breach of contract claims at issue in the

9    insurance action.  Instead, the Court will focus on whether

10   any delay would prolong the administration of the debtors'

11   Chapter 11 cases.

12           The Court finds that the administration of the

13   debtors' cases will not be lengthened by remand of the

14   insurance action for several reasons: first, the debtors are

15   selling their assets and informed the Court that they will

16   be filing, and indeed have filed, a plan of liquidation.  As

17   such, the absence of the more traditional melting ice cube

18   concerns typically found in a reorganization case undercuts

19   the debtors' claimed need for a speedy adjudication of the

20   insurance action.

21           The timeliness required, as the insurers note, can

22   be, quote, "weighed relatively lightly in a liquidation

23   scenario" when there is no, quote, "administrative urgency

24   or plan of reorganization to facilitate."  Worldview

25   Entertainment Holdings v. Woodrow, 611 B.R. 10 at 19

Page 30

1    (S.D.N.Y. 2019).

2            Further, as already discussed, the debtors have

3    sold their underlying claims in the insurance action, the

4    results that nearly -- that all or nearly all of the

5    recoveries obtained by plaintiffs in the insurance action

6    will inure to the benefit of the Gindi parties and not to

7    the debtors' estate.  Thus, the sale further diminishes: (1)

8    the debtors' asserted connection between their bankruptcy

9    estates and the state law claims in the insurance action;

10   and (2) the debtors' claimed need for quick resolution of

11   the insurance action in order to timely administer their

12   Chapter 11 cases.

13           Moreover, the debtors' retention of upside

14   potential in the event that proceeds from the insurance

15   action exceed $75 million will not interfere with the

16   administrative of and future closure of the debtors' cases

17   when warranted.  As highlighted by counsel to the insurers

18   during oral argument, by the sale documents, the debtors

19   provided for the possibility that a plan of liquidation may

20   be confirmed in the Chapter 11 cases prior to resolution of

21   the insurance action; specifically, Section 8(a) of the

22   participation agreement for the sale of the debtors'

23   interest in the insurance action, which section is entitled,

24   assignment after emergence from bankruptcy, specifically

25   provides for the transfer of the insurance action to a po

Page 31

1    emergence litigation trust in the event of the closure of

2    the debtors' Chapter 11 case.  See December 16th, 2020

3    hearing transcript, page 31, lines 10 to 32, citing to

4    Section 8(a) of the participation agreement, which was

5    annexed as Exhibit 1 to Exhibit A to the sale motion filed

6    at Docket No. 324.

7            Simply put, resolution and, indeed, closure of the

8    debtors' bankruptcy cases no longer depends on resolution of

9    the insurance action.  Accordingly, the Court concludes that

10   the State Court can timely adjudicate the insurance action

11   within the meaning of Section 1334(c)(2) of Title 28.

12           With respect to the remaining four factors under

13   Section 1334(c)(2), the parties do not dispute they are

14   satisfied here.  Accordingly, for all the foregoing reason,

15   the Court concludes that each of the requirements under

16   Section 1334(c)(2) for mandatory abstention has been met and

17   will remand the insurance action to the State Court.

18           Taking a breath before I turn to permissive

19   abstention.

20           All right.  While the foregoing ruling ends the

21   inquiry, the Court will nonetheless discuss the insurers

22   request for permissive abstention or equitable remand,

23   assuming arguendo that mandatory abstention is not required.

24           Section 1334(c)(1) of Title 28 provides that

25   nothing prevents a Court, quote, "in the interest of just

Page 32

1    or in the interest of comity with state courts or respect

2    for state law from abstaining from hearing a particular

3    proceeding arising under Title 11 or arising in or related

4    to a case under Title 11."  28 U.S.C. Section 1334(c)(1).

5              Similarly, under Section 1452(b) of Title 28, the

6    Court, quote, "may remand such claim or cause of action on

7    any equitable ground."  28 U.S.C. Section 1452(b).  Courts

8    employ the same tests for permissive abstention and

9    equitable remand.  See CAMO-FI Master LDC v. U.S. Coal

10   Corp., 527 B.R. 138 at 143 (S.D.N.Y. 2015).

11             In determining whether to permissively abstain,

12   courts consider numerous factors, including: (1) the effect

13   or lack thereof on the efficient administration of the

14   estate if a Court recommends abstention; (2) the extent to

15   which state law issues predominate over bankruptcy issues;

16   (3) the difficulty or unsettled nature of the applicable

17   law; (4) the presence of a related proceeding commenced in

18   state court or other non-bankruptcy court; (5) the

19   jurisdictional basis, if any, other than 28 U.S.C. Section

20   1334; (6) the degree of relatedness or remoteness of the

21   proceeding to the main bankruptcy case; (7) the substance,

22   rather than form, of an asserted core proceeding; (8) the

23   feasibility of severing state law claims from core

24   bankruptcy matters to allow judgments to be entered in State

25   Court with enforcement left to the Bankruptcy Court; (9)

Page 33

1      burden on the Court's docket; (10) the likelihood that the

2      commencement of the proceeding in a Bankruptcy Court

3      involves forum shopping by one of the parties; (11) the

4      existence of a right to jury trial; and (12) the presence in

5      the proceeding of non-debtor parties.    See Deutsche Oel &

6      Gas settlement agreement v. Energy Capital Partners

7      Mezzanine Opportunities Fund A, LP, 2020 WL 5814233 at *12

8      (S.D.N.Y. Sept. 30, 2020).

9              In essence, courts have a compelling reason to

10     permissively abstain when the relevant state action, quote,

11     "sounds in state law and bears a limited connection to the

12     debtors' bankruptcy case."    Channel Bell Associates v. W.R.

13     Grace, 1992 WL 232085 at *8 (S.D.N.Y. Aug. 31, 1992).

14             Courts have held that the, "more substantial

15     factors to consider in determining whether to abstain from

16     hearing an action are: (1) the effect on the administration

17     of the estate; (2) whether the claim involves only state law

18     issues; and (3) whether the proceeding is core or non-core."

19     See Fruit of the Loom v. Magnetek, 407 B.R. 593 at 600

20     (Bankr. D. Del. 2009).

21             The decision whether or not to abstain is within

22     the Bankruptcy Court's sound discretion.    In re. Nasser,

23     2020 WL 5985427 at *3 (Bankr. E.D.N.Y. Oct. 8, 2020).    The

24     movant has the burden of showing that permissive abstention

25     is appropriate.    In re. Tronox, 603 B.R. 712 at 726 (Bank

Page 34

1    S.D.N.Y. 2019).

2         Assuming arguendo that mandatory abstention is not

3    required here, after considering each of the factors

4    identified by the District Court in Deutsche Oel & Gas, the

5    Court finds that an overwhelming majority of such factors

6    weigh in favor of permissive abstention and remanding the

7    insurance action to the State Court.

8         Specifically, the Court has focused on certain

9    factors identified as more substantial by the Bankruptcy

10   Court for the District of Delaware in Fruit of the Loom: the

11   effect on the administration of the estate if the Court

12   recommends abstention; whether the claim involves only state

13   law issues or to the extent to which state law issues

14   predominate; and whether the proceeding is core or non-core.

15        The Court has also considered the degree of

16   relatedness or remoteness of the proceeding to the main

17   bankruptcy case as highly relevant here.

18        With respect to the affect remand would have on

19   the efficient administration of the estates, the debtors

20   argue that adjudication in this Court would facilitate the

21   efficient administration of the debtors' estate, and I

22   quote, "distributions to general unsecured creditors hinge,

23   at least in part, on the resolution of the insurance action

24   as the insurance action is the largest asset to be monetized

25   in order to pay distributions to unsecured creditors."

Page 35

1   Opposition brief at paragraph 65.  However, as previously

2   noted, that is simply no longer the case.

3           Following the hearing on the motion to remand, the

4   Court approved the sale of the debtors' interest in the

5   insurance action and that sale has now closed.  The debtors

6   have monetized this asset and payment for the asset has been

7   made to the estate.  Distribution to general unsecured

8   creditors no longer largely hinges on the resolution of the

9   insurance action; in fact, the resolution of the insurance

10  action may have little impact on the administration of the

11  debtors' estate.

12          Second, regarding the extent to which state law

13  issues predominate over bankruptcy issues, this factor

14  heavily support permissive abstention here.  The insurance

15  action is indisputably a state law cause of action commenced

16  prepetition in State Court and solely involves issues of

17  state law.  As the insurers properly point out, there is no

18  question of bankruptcy law or any other federal law to

19  resolve.  See insurer's reply at paragraph 47.

20          Finally, this Court has determined that the

21  insurance action is a non-core proceeding, which also weighs

22  in favor of remand.  The Court does find that the insurers

23  have met their burden to demonstrate that permissive

24  abstention is warranted here in the event that mandatory

25  abstention would not apply.

Page 36

1                    Conclusion.  For all of the foregoing reasons, the

2        Court concludes that all of the requirements under Section

3        1334(c)(2) of Title 28 for mandatory abstention have been

4        met and the motion to remand the insurance action to the

5        State Court is granted.  Assuming arguendo that abstention

6        is not mandatorily required, the Court nonetheless

7        determines in the exercise of its discretion to abstain and

8        remand the insurance action pursuant to Section 1334(c)(1)

9        and 1452(b) of Title 28.

10                   Parties are directed to submit an order consistent

11       with the foregoing bench decision.

12                   Okay, that concludes the ruling.  Is everybody

13       still there?

14                   MR. ANKER:  Yes, Your Honor.

15                   THE COURT:  Mr. Anker, how are you?

16                   MR. ANKER:  I am fine, Your Honor.  Happy New

17       Year.  I hope you are continuing to do well in these crazy

18       times.

19                   THE COURT:  We're doing well.  I was thinking

20       about asking you all to join me on Zoom and I might have

21       delivered that opinion with a cat filter on my screen, but I

22       decided against that, so there you have it.

23                   All right.  So Mr. Anker, you'll reach out to the

24       folks at Proskauer.  Please prepare an order, submit it,

25       we'll get it on the docket.  Please indicate in the order

Page 37

1    that for the reasons stated on the record and the motion is

2    granted and you should incorporate the transcript of the

3    ruling into the order.  All right, any questions on the

4    adversary proceeding?

5              Okay.  Well, hearing none, I would suggest that

6    anyone who has dialed in in order to listen to the adversary

7    proceeding, you're welcome to drop off.  I'm going to take

8    about a two-minute break to drink some water and then we're

9    going to turn to the administrative claim issue.

10             Thank you all on the adversary proceeding.  It's

11   at least good to hear Mr. Anker's voice on behalf of you

12   all.

13             MR. ANKER:  Thank you, Your Honor.

14             THE COURT:  I'll be back in about four minutes.

15        (Recess)

16             THE COURT:  All right.  Thank you for waiting,

17   everyone.  I see we've lost quite a few folks, but I see I

18   still have Mr. Vandermark and some folks from Proskauer.  So

19   we're going to now turn to the Acro Display motion for

20   allowance and payment of an administrative expense claim.  I

21   have the pleadings, and I am going to ask Mr. Vandermark.

22   Good morning.

23             MR. VANDERMARK:  Good morning, Your Honor.  James

24   Vandermark with White and Williams on behalf of Acro

25   Display.

Page 38

1          THE COURT:  All right.  It's your motion, Mr.

2    Vandermark, you should assume that I've read everything

3    carefully, but I'm going to give you an opportunity to make

4    whatever presentation you'd like.

5          MR. VANDERMARK:  Thank you, Your Honor.  Your

6    Honor, as you've mentioned, you've read everything.  The

7    significant sort of evidence in this case is presented in

8    the stipulation of fact, which is on the docket at no. 566.

9          Relative here, Your Honor, is the fact that Acro

10   Display is a small family-owned company that was defrauded

11   by the debtors in this case pursuant to UCC 2702(2), because

12   the debtors took the goods at issue in this case at a time

13   when the debtor -- or when the debtors were insolvent.

14          I don't think there's any dispute between the

15   parties that Acro Display timely and properly asserted a

16   reclamation demand pursuant to UCC 2702 as adopted in New

17   York, New Jersey and Florida, and as modified by Section 546

18   of the Bankruptcy Code.

19          For clarity of the record, the debtor in this case

20   admits that it was insolvent during the relevant periods,

21   the demand was timely made, the goods were identifiable, and

22   the goods were in the debtors' possession at the time the

23   demand was served.

24          What is in dispute in this case, Your Honor, is

25   whether the debtors can avoid paying for the use of goods

Page 39

1    because of a floating lien held by the prepetition agent in

2    this case.  Critical to addressing this issue is a

3    determination of the parties' interests in the reclamation

4    and let me start with the debtors in this case.  When the

5    goods were delivered to the debtors, they held only the

6    feasible title interest in the reclamation goods at issue.

7    That title was subject to the obligation to pay for the

8    goods.  They did not do so.  Instead, they took possession

9    of these goods and Acro Display treated the defrauded seller

10   under UCC 2702(2), and that's clear under the relevant state

11   laws that are cited in our papers.

12            And I think it's significant that the Second

13   Circuit in the Koreag decision, and that's 961 F.2d 341, has

14   already addressed the effects of a reclamation demand under

15   UCC 2702(2) and its effect on the debtors' estate.  In that

16   decision, the Second Circuit determined that a valid

17   reclamation demand removes the subject goods from the

18   debtors' estate, so it is our position that the reclamation

19   goods in this case are not part of the debtors' estate.

20            And so, the conclusion of that, Your Honor, is

21   that the debtors no held title or interest in the goods

22   after the reclamation demand was served.

23            The reverse of that, of course, is that Acro

24   Display held title to the reclamation goods.  As a result

25   the reclamation demand, it was the title owner of those

Page 40

1    goods while the debtors used them during this case.  And

2    that laud and novel sort of concept as far as Acro Display's

3    claim goes because the debtor is sort of the same thing as a

4    landlord-tenant case, which we reference in our raise of the

5    Koreag case where, you know, a debtor who occupies or uses

6    goods of another party has to pay for that use or occupancy

7    of those goods.

8            Let me turn to the prepetition agent's interest in

9    the goods.  I mean, as probably aware, the parties motion

10   dispute from what interest the prepetition agent holds in

11   the goods at issue.  Much like the debtors, our position is

12   that the prepetition agent holds no interest in those goods;

13   it was a defeasible interest under UCC 2702, and upon the

14   reclamation then, that was also reverted to the Acro

15   Display.

16           The very purpose of Section 2702 is to protect a

17   defrauded seller.  As the Sixth Circuit noted in the

18   (indiscernible) case, allowing debtors to use reclamation

19   goods during a bankruptcy case without paying for that use

20   would allow the debtors to benefit from the fruits of their

21   fraud and defeat the very object and purpose of UCC 2702.

22           So allowing the debtors in this case to use the

23   goods, to pay other creditors for the benefit of the estate

24   without paying for that use is exactly what the

25   (indiscernible) decision is trying to address.  However,

Page 41

1    we've laid out in our papers, even if the prepetition agent

2    lien attached and were not defeasible, it would not relieve

3    the debtors from their obligation to return the reclamation

4    goods to Acro Display.  The debtors simply had no right to

5    use the reclamation goods during this case.

6            Even as the Circuit City Stores case, which the

7    debtors rely upon in their papers, addressed, that

8    administrative expense claim is appropriate where debtors

9    simply ignore the reclamation demand, and the result is a

10   benefit to the estate.

11           I think just for sort of a real short address on

12   sort of the cases relied upon by the debtors, I think

13   there's a clear distinction in some of the Southern District

14   cases we rely on, such as the Dana Corp. and Dairy Mart

15   cases.

16           First, the administrative claim asserted in those

17   cases is under 546 and not 503(b), so the Courts addressed

18   the right to administrative claim in those cases under 546

19   and didn't address 503(b).

20           Second, there's also no real dispute between the

21   parties as to the property rights and interest in those

22   cases.  In fact, in the Dairy Mart case, it was agreed that

23   the lien creditor held a priority claim.  There's no

24   discussion, sort of give the (sound glitch) those parties

25   those cases.  I think if you look at the (indiscernible)

Page 42

1   the Marigold Shoes case out of the Sixth Circuit where

2   property rights were at dispute, there's a much more in-

3   depth address.  The Court addresses the property rights of

4   the parties much more in-depth, and it gets to the

5   conclusion that a seller holds title and the liens created

6   by the debtors were defeasible.

7           So here, Acro Display is contesting the debtors'

8   assertion that the prepetition agent has a lien on the

9   reclamation goods on that same principle.

10          Finally, I think the other distinguishing point

11  between Dana Corp. and Dairy Mart and with similar cases is

12  that the goods were sold and the cash used to pay for the

13  lenders' claims.  In fact, I think it was in the Dana Corp.

14  case, Judge Lifland specifically states that it was the sale

15  of the goods that rendered the reclamation claim valueless.

16          Here, the goods were not sold by the debtors and

17  they weren't used to pay the prepetition agent.  Rather,

18  they were used by the debtors just like any holdover tenant

19  uses an apartment, and when the debtors no longer had any

20  use for the reclamation goods, they were abandoned.

21          So I think those are sort of our reasons for why

22  we addressed the issues we did in our brief, and we would

23  assert that Acro Display is entitled to the administrative

24  claim based on the use, the value and benefit to the

25  debtors' estate during the period.

Page 43

1           I think your Court will notice that the parties

2      address in their stipulation of facts in paragraph 17, the

3      period for the use, both prepetition and post-petition, and

4      it's Acro Display's contention that the debtors should pay

5      for the use -- the administrative claim that's recognized

6      there in the post-petition column.

7           THE COURT:  Okay.  Let me ask you one question,

8      Mr. Vandermark.  You alluded or stated at the beginning of

9      your presentation what a devastating impact from an economic

10     standpoint the situation between Acro and Century 21 is, and

11     part of your request is for immediate payment of an allowed

12     administrative claim.

13          I'm not sure that you -- it's unclear to me, other

14     than the general desire of a creditor who wishes to be paid,

15     what there is in the record that supports an exception to

16     the usual rule that the administrative claim would be paid

17     under a confirmed plan.

18          MR. VANDERMARK:  Yes, Your Honor.  I think at this

19     point, Acro Display will agree to be paid in the normal

20     course of its administrative claim if granted.

21          THE COURT:  Okay, that takes care of that issue.

22     All right.  Did you have anything else, Mr. Vandermark?

23          MR. VANDERMARK:  No, Your Honor.

24          THE COURT:  Okay, all right.  And who is going to

25     take this up on behalf of the debtor?

Page 44

1          MR. YOUNG:  Your Honor, Peter Young on behalf of

2     Proskauer.  Ms. Kweskin left me with this on her way out, so

3     I appreciate that, and I'll take it on her behalf.

4          THE COURT:  Well, Ms. Kweskin did a great job

5     stewarding these cases through the beginning and we wish her

6     well.  But in her stead, I'm now going to give you the hard

7     time that I would have given her.

8          MR. YOUNG:  Of course, of course.  Thank you, Your

9     Honor, I appreciate that.

10         THE COURT:  Thank you for being, in advance, for

11    being a good sport, Mr. Young.

12         MR. YOUNG:  Sure.

13         THE COURT:  This is just a head scratcher to me.

14    It's $133,000.  There's unquestionably a benefit to Century

15    21.  Acro asked for its stuff back; the debtor didn't give

16    Acro its stuff back.  It used, you know, the shelving during

17    the liquidation sale.  The lender hasn't asserted a lien;

18    the lender's been paid in full.

19         And here's one notable non-fact: the committee

20    hasn't objected to this.  So I suppose you could say, well,

21    you know, Acro is an unsecured creditor, they're not going

22    to object to a claim by one of their own.  But, you know, as

23    a fiduciary, the committee would assert an objection to the

24    allowance of an administrative claim that would take, you

25    know, recovery out of their pockets, and the committee

Page 45

1    hasn't filed an objection here.

2         So I don't understand what the calculus was to

3    expend the resources to litigate this.  I can't, you know, I

4    won't speculate about whether there could have been a

5    settlement at some discount, but we are where we are.  And

6    you could probably guess where I'm going, but I'll

7    nonetheless give you an opportunity to try to do as good a

8    job as Ms. Kweskin would have done if she were here to argue

9    today.

10        MR. YOUNG:  I appreciate that, Your Honor, and

11   thank you for your preview.  I believe the committee

12   supports the debtors' position, but I won't speak for Mr.

13   Weisenberg, who I know is participating.

14        Your Honor, let me start by saying this:  The

15   debtors appreciate the position in which Acro Display finds

16   itself and, indeed, the position in which all of the

17   creditors of the debtors find themselves.  But if the Court

18   were to adopt the position taken today and in the papers by

19   Acro Display, Your Honor, it would mean that a prepetition

20   creditor whose reclamation claim was rendered valueless by

21   applicable statutes, who's unable to avail itself of a claim

22   under Section 503(b)(9) of the Bankruptcy Code, and with

23   which the debtors had zero post-petition transactions can

24   elevate its general unsecured claim to an administrative

25   expense of the debtors' estates to the detriment of the

Page 46

1    debtors' other general unsecured creditors.

2            THE COURT:  You've lost me.  You lost me a couple

3    of moments ago.

4            MR. YOUNG:  Sure.

5            THE COURT:  Why don't they -- you're assuming the

6    conclusion that you want.  I mean, they made a reclamation

7    demand, and at that point title reverted to the goods and

8    the debtor kept the shelving.

9            MR. YOUNG:  Your Honor, if I may.  The title

10   didn't revert to the goods, right, and here's why.  I think

11   that --

12           THE COURT:  Then let me put it differently.  The

13   debtors at that point were obligated to return the goods.

14           MR. YOUNG:  Your Honor, we weren't obligated on

15   account of the fact that title passed the moment that the

16   debtors took possession of those shelving units, and as soon

17   as title passed, they became immediately subject to our

18   senior lenders' liens.  And so, Section 546 --

19           THE COURT:  But the lender --

20           MR. YOUNG:  Go ahead, I'm sorry.

21           THE COURT:  The lender didn't assert the lien.  I

22   mean --

23           MR. YOUNG:  Your Honor, the lender absolutely

24   asserted the lien.  In fact, the stipulation of facts I

25   think Your Honor provides that we approached JPMorgan, we

1    said we have a one reclamation claim that was received in

2    these cases, in large part because, you know, we weren't

3    purchasing goods and inventory prior to the filing.  We were

4    essentially self-liquidating, selling the assets of the

5    business.

6              We informed -- and this is included, Your Honor,

7    in the stipulation of facts at paragraph 15 -- I'm sorry, at

8    paragraph 13 -- that as soon as the liquidation sales

9    concluded -- in some cases, that was going to be 30 days

10   after the petition date, Your Honor might recall given the

11   store closing motion -- that Acro Display could, in fact,

12   come and reclaim those goods.  But it took, you know, it

13   took that period for those goods to be reclaimed.

14             I think the problem here, Your Honor, for

15   Acro is this, that 546(c) and 2702 of the Uniform Commercial

16   Code render reclamation claims by suppliers of goods subject

17   to the prior lender in every case where the senior lender is

18   owed more than the amount of the reclamation claim.

19             Here, our senior lenders were --

20             THE COURT:  I just don't understand.

21             MR. YOUNG:  Sure.

22             THE COURT:  I mean, didn't the agent tell the

23   debtors that Acro could retrieve its stuff?

24             MR. YOUNG:  No, certainly not.  And, Your Honor

25   think Ms. Frost-Davies is on the phone and willing to

Page 48

1    support the argument of the debtors that they weren't

2    willing to release any bit of the collateral package that

3    they had securing their loan at that time.  And like I said,

4    immediately upon the debtors' receipt of those goods and

5    taking title, they became subject to that lien.  We couldn't

6    strip from the debtors' assets collateral that belonged to

7    our senior lender.

8           And I think, Your Honor, that, you know, it was in

9    Dana Corporation --

10          THE COURT:  Could you look at the stipulation of

11   facts, paragraph 15?

12          MR. YOUNG:  Yes.  That was a time, Your Honor,

13   when -- yeah, so there were five stores at which the

14   shelving units were installed.  There were two stores that

15   closed the doors within 30 days of the petition date; there

16   were three stores that closed the doors within, you know, 90

17   days of the petition date when all of the other stores

18   closed.

19          At the point at which the stores closed, Your

20   Honor, because the shelving unit was sort of custom to the

21   stores, those shelving units were of no value.  So Hilco

22   Resale, who was, as you know --

23          THE COURT:  Hold on, hold on.  You can't -- you're

24   making that up.  I mean, they issued a reclamation demand

25   right.

Page 49

1          MR. YOUNG:  Right.

2          THE COURT:  And then within two weeks or so, the

3    prepetition agent said Acro can get its stuff.  And, you

4    know, I just, you know, the problem here is that -- and I'm

5    going to kind of cut to the chase.  I mean, I just find this

6    -- the amount -- the opposition to this and the course of

7    conduct to be offensive and troubling.  It's hyper-

8    technical.  The creditors' committee, I mean, you can say

9    that they support your position; they didn't file anything.

10   The creditors' committee did not file an objection, so I'm

11   really not going to hear from them now to say that they're

12   down with this treatment.

13          It's pretty clear that the lender wasn't too

14   concerned about this.  It is very troubling to me that you

15   would rely on the argument that there was no benefit to the

16   estate because you can't readily quantify it.

17          Let me distinguish between something that was, you

18   know, of no value to the estate.  I mean, the classic debate

19   that you have in an administrative claim argument where

20   there was something that occurred or that existed post-

21   petition but there is no, quote/unquote, "benefit" and

22   people argue about the benefit.

23          So here, of course there was a benefit.  This was

24   -- you know, you're not making the argument that this was

25   you know, somewhere in some warehouse and it provided no

Page 50

1    benefit; of course, it provided a benefit.  And I just

2    simply do not understand -- and I'm tempted to ask -- you

3    know, what the amount of money that the debtors' estate has

4    spent litigating this.  I just don't get it.  I just don't

5    get it.  You're not -- you know, there's no danger here in

6    this entirely fact-intensive backdrop for there to be a

7    concern that somehow this is going to change the law and

8    provide an avenue for unsecured creditors to convert their

9    claims into administrative expense claims.  I just -- I'm

10   absolutely not seeing it.

11        MR. YOUNG:  Your Honor, I'm not sure about that

12   because I think what this does is -- if you are right and

13   certainly, you know, I hear you on that position, you're

14   essentially talking about elevating, I guess, under a

15   503(b)(1) claim to administrative expense status a claim

16   that has no post-petition transaction, right.

17        I mean, we can talk in a minute about the benefit

18   to the debtors' estates, which is the second element of it,

19   but a 503(b)(1) claim in the first instance requires a post-

20   petition transaction, right; this was stuff delivered to the

21   debtors all prepetition.  And so, our problem here is that

22   if you treated anyone who delivered goods or inventory or

23   anything else to the debtors prepetition, then any creditor

24   who supplies any debtor with anything that the debtors use

25   in any capacity post-petition could give rise to an

Page 51

1    administrative expense claim?  I just don't think that's the

2    case.  That can't be the standard because if it is --

3              THE COURT:  Yeah.  You know, you are shading the

4    facts to fit your argument.  I think the facts here are

5    distinguishable.  The flip side of it is that with your

6    reliance on the fact that the stuff -- I mean, what's a

7    reclamation claim?  A reclamation claim always involves

8    stuff that arrives prepetition.

9              MR. YOUNG:  Totally right, Your Honor, but in

10   recognition, right, that the fact that reclamation claims

11   are often defeated by the floating blanket liens that exist

12   in so many of these cases that you see.  Congress enacted

13   503(b)(9) to address that issue.  And if a creditor can

14   qualify for a 503(b)(9) claim, then that's some recourse

15   that takes them outside the purview of a reclamation demand

16   under either state law or 546(c).

17             THE COURT:  But look, they made a -- they made a

18   reclamation demand.  The lender said no problem.  You said

19   too bad, you cannot --

20             MR. YOUNG:  No, no, no, Your Honor, I'm sorry, let

21   me clear up the record.  The lender did not say no problem.

22   The lender said absolutely not, those goods are subject to

23   our lien.  It was only after the lender understood that

24   those goods were going to be abandoned in connection with

25   the store closings did we say to Acro, listen, we'll

Page 52

1    organize with our landlords your ability to go and get that

2    stuff if you want it back.

3              Now, Acro, probably thinking that those --

4              THE COURT:  Mr. Young.

5              MR. YOUNG:  Sorry, Your Honor, go ahead.

6              THE COURT:  I'm going to ask you to stop.  I'm

7    going to ask you to stop, okay.

8              Mr. Weisenberg, you have your hand up.

9              MR. WEISENBERG:  Thank you, Your Honor.  For the

10   record, this is Brent Weisenberg on behalf of the Official

11   Committee of Unsecured Creditors.

12             Your Honor, you mentioned the committees having

13   not filed a pleading either supportive of the debtor in this

14   case or otherwise.  The reason we didn't file anything, Your

15   Honor, was precisely as you identified, which was the cost

16   benefit analysis of spending additional administrative fees

17   on this issue.

18             With that said, we were supportive of the debtor

19   holding our creditors --

20             THE COURT:  Mr. Weisenberg, it doesn't work like

21   that.  You don't get to, in this hearing, now say had you

22   filed an objection, you know -- you could of, without

23   breaking a sweat, filed a joinder.  So I'm sorry, it doesn't

24   count, too little too late.

25             MR. WEISENBERG:  Oh, Your Honor, I apologize.

Page 53

1    may be misunderstanding me.  What I'm saying is that we were

2    supportive of the debtor holding a creditor to its burden,

3    but if Your Honor ultimately believes that the creditor

4    fulfilled its burden, then we are entirely supportive of a

5    creditor being paid what it's owed.

6          And so, I'm not belatedly trying to assert an

7    objection.  What we're merely saying is, again, that if a

8    creditor can meet its burden of having an administrative

9    priority, you're exactly correct, Your Honor, that this is

10   relatively de minimis for this estate and, therefore, the

11   creditor should be paid what it's owed.

12         THE COURT:  Okay.  I'm not even going to respond.

13   That's just a statement of the law, so that's not

14   significant.  Obviously, I would find -- obviously, there's

15   going to be a basis for finding that there's an

16   administrative claim, so I just don't even know what to say.

17         Does anyone -- someone else has their hand up.

18   Ms. Frost-Davies.

19         MS. FROST-DAVIES:  Good afternoon, Your Honor.

20   Actually, I think we're still in the morning.  Good morning,

21   Your Honor.  Julia Frost-Davies on behalf of JPMorgan Chase.

22         Your Honor, I find myself in a bit of an awkward

23   spot because the issue is a 503(b)(9) administrative expense

24   issue, which is junior to my client's claims and, therefore,

25   I haven't weighed into this point.

Page 54

1          The only thing I'd like to clarify, so it's not

2    misconstrued by counsel for Acro or otherwise, is that the

3    goods were subject to the prepetition agent's lien.  From

4    our perspective, whether or not we, you know, asserted in

5    this connection, well, we weren't paid off, and the lenders

6    don't need to resort to that is a different issue.

7          But under 546(c) and the interim cash collateral

8    order, page 6, footnote 4, reclamation goods are expressly

9    not permitted liens.  So I simply wanted to make that clear

10   as a matter of our law and so, to your point, Your Honor, as

11   to where there may be precedent.  So with 503(b)(9), it's

12   junior to my clients.  I don't have a dog in that hunt.

13          THE COURT:  Thank you.

14          MR. YOUNG:  Just to clarify, Your Honor -- it's

15   Peter Young again at Proskauer -- this wasn't asserted as a

16   503(b)(9) claim; it was asserted as a 503(b)(1)(A) claim.

17          THE COURT:  Okay.  Mr. Vandermark, do you want to

18   reply to any of that?

19          MR. VANDERMARK:  Just briefly, Your Honor.  I

20   think what's really, I think, distinguishing here is that

21   counsel for the debtors does not address sort of the

22   property rights issues, neither in their papers or at

23   today's hearing, which I think is critical sort of, for Acro

24   Display's rights here and the continued use post-petition

25          When they look at what is the post-petition

1    transaction, it's the continued use that wasn't permitted.

2    They sort of unlawfully used those, because they had the

3    obligation to return them and title verted to Acro Display,

4    so that's the basis for the transaction.  And the benefit I

5    think has already been addressed; I won't go further on

6    that.

7                But I think that's all I have to respond to on

8    what's been addressed, Your Honor.

9                THE COURT:  All right.  Mr. Young, do you want to

10   say anything else?

11               MR. YOUNG:  I'm nervous, Your Honor, but I will

12   say this.  If you're inclined to grant Acro -- and it sounds

13   like you are -- an administrative expense against the

14   estates under 503(b)(1)(A), I don't think that claim should

15   be in the amount reflected on Acro Display's invoices as the

16   price of the shelves.

17               Again, three of the stores in which the shelves

18   were installed ceased operating on October 7th, less than a

19   month after the petition date, and the other two stores in

20   which they were installed ceased operating on December 7th,

21   which was, you know, three months after the petition date.

22               And there's no evidence in the record, Your Honor,

23   that any of the debtors' sales of goods in this case were

24   attributable to the fact that the shelves provided by Acro

25   were the means by which the debtors displayed that

Page 56

1    inventory.  So if you're inclined to --

2          THE COURT:  We really -- are we really going to do

3    this?  You didn't make any argument about the amount.  You

4    made the argument that it's not quantifiable.  You really

5    want to have an evidentiary hearing on what was on the

6    shelves in each of the stores for what periods of time?  Two

7    stores used these shelves for 87 days. three stores used the

8    shelves for 27 days; that's what the stipulation says.

9          MR. YOUNG:  Your Honor, I'm happy to drop the

10   arguments in light of your comments.

11         THE COURT:  Well, again, I just am perplexed by

12   this.  As I've indicated I view the debtors' arguments as

13   hyper-technical and, frankly, inequitable.  I think that the

14   debtors need to compensate Acro for their impermissible and

15   continued use of the reclamation goods, and that there's no

16   doubt that the reclamation goods -- use of the reclamation

17   goods meet the standard of being an actual and necessary

18   cost of operating the debtors' business in a way that

19   maximized the values of the debtors' estate.

20         I think the argument that there's not a

21   quantifiable benefit rings particularly hollow here, and

22   indeed, that this was custom shelving; it was used to

23   display and sell the debtors' goods during the liquidation

24   sales.  If it was not going to provide any benefits, they

25   should have let Acro come and pick it up and they didn't

Page 57

1    that.

2            There seems to be a lot of emphasis on the fact

3    that there's no so-called post-petition transaction,

4    focusing on the fact that the shelving was installed in the

5    stores before the petition date.  But again, I view this as

6    that argument is hyper-technical.  It ignores the fact that

7    there are a number of ways to find the existence of post-

8    petition transaction.

9            First, you can look through the service of the

10   reclamation demand itself and the debtors' refusal to return

11   the reclamation goods, which I think can be characterized as

12   a post-petition transaction.  And secondly, the debtors

13   continued use of the goods during the post-petition period

14   for the benefit of the estate itself can be considered a

15   post-petition transaction.

16           Mr. Vandermark, I think, addressed the other

17   arguments persuasively in the reply brief that was filed on

18   behalf of Acro.  At the top, I did challenge Mr. Vandermark

19   to demonstrate the need for administrative expense claim now

20   and he's conceded that point, so that makes that easier.

21           And with respect to the amount, there was no in

22   the alternative argument that the amount was wrong or should

23   be subject to further dispute.

24           I do not think fundamentally that this is a good

25   use of estate funds to continue to litigate this matter,

Page 58

1    I think there's an ample basis to grant Acro's motion for

2    the allowance of the administrative expense claim in the

3    amount requested, and such claim should be payable pursuant

4    to the confirmed plan of liquidation.

5            So I'm going to ask you to submit an order

6    incorporating the record of this hearing and stating that

7    for the reasons set forth on the record, Acro's motion is

8    granted.

9            MR. VANDERMARK:  Thank you, Your Honor.

10           THE COURT:  All right.  Mr. Young?

11           MR. YOUNG:  Thank you, Your Honor.  I think that

12   brings us to conclusion.

13           THE COURT:  All right.  Sorry to give you a hard

14   time, but...

15           MR. YOUNG:  I've had hard times before, Your

16   Honor.  I appreciate that, thank you.

17           THE COURT:  All right, thank you.  Okay.  Well, we

18   did our best today to address everything that's pending.  We

19   are very much looking forward to scheduling the disclosure

20   statement and plan hearing and moving these cases toward a

21   swift conclusion.  All right?

22           I think that's all we have.  Please everybody,

23   stay safe, Happy Valentine's Day, and we'll keep an eye out

24   for all of the orders.  Thank you.

25           MR. VANDERMARK:  Thank you, Your Honor.

Page 59

1              (Whereupon these proceedings were concluded at

2      11:30 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 60

1                          I N D E X

2

3                         RULINGS

4                                        Page        Line

5  Motion to Remand the Insurance Action to

6  The State Court is Granted              36          5

7  Acro Display LLCs Motion for Allowance and

8  Payment of Administrative Expense Granted  58        8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 61

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    **Sonya Ledanski**

6    **Hyde**

    Digitally signed by Sonya Ledanski Hyde
    DN: cn=Sonya Ledanski Hyde, o, ou,
    email=digital@veritext.com, c=US
7    Date: 2021.02.15 16:28:52 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:   February 15, 2021

[& - 5]                                                                     Page 1

| **&** |
| --- |
| **&**   5:1,15 10:1,8 10:14,17 33:5 34:4 |

| **0** |
| --- |
| **02110**   5:18 |
| **07068**   5:11 |

| **1** |
| --- |
| **1**   8:11 13:6 16:3 17:6 18:2,19 19:19 23:15 26:13 28:7 30:7 31:5,24 32:4,12 33:16 36:8 50:15,19 54:16 55:14 |
| **1,216.80**   11:20 |
| **10**   24:6 25:16 29:25 31:3 33:1 |
| **10004**   2:3 |
| **10007**   5:4 |
| **10014**   4:14 |
| **10036**   4:6,21 |
| **1006**   4:13 |
| **1095**   19:7 |
| **10:00**   2:6 |
| **10th**   15:7 |
| **11**   14:2 15:6 16:7 18:21,22,22 20:7 20:8 23:6,9,14 24:14 28:24 29:11 30:12,20 31:2 32:3,4 33:3 |
| **1100**   19:7 |
| **1101**   19:7 |
| **1102**   20:24 |
| **11501**   61:23 |
| **11:30**   59:2 |
| **11th**   15:7 |
| **12**   2:5 33:4,7 |
| **13**   47:8 |
| **133,000**   44:14 |

| **1334**   13:4,6 16:3 17:4,9,13,24 18:3 18:7,14 26:8 31:11,13,16,24 32:4,20 36:3,8 |
| --- |
| **134**   19:22 |
| **136**   19:22 |
| **138**   32:10 |
| **143**   32:10 |
| **1452**   13:10 16:3 32:5,7 36:9 |
| **15**   47:7 48:11 61:25 |
| **157**   18:19 19:1,12 |
| **158**   18:24 |
| **16th**   13:19 25:10 25:16 27:22 31:2 |
| **17**   43:2 |
| **175**   15:4 25:12 |
| **19**   14:14 15:2 28:20 29:25 |
| **196**   27:5 |
| **197**   21:8,23 |
| **1992**   33:13,13 |
| **1993**   19:7 |
| **1999**   21:9 |
| **1st**   14:10,11 |

| **2** |
| --- |
| **2**   13:4 17:4,7,13 17:24 18:2,7,14 19:12,20 23:17 26:8,14 27:23 28:9 30:10 31:11 31:13,16 32:14 33:17 36:3 38:11 39:10,15 |
| **20**   25:17 |
| **20-01222**   1:4 3:17 |
| **20-12097**   1:3 |
| **20-1222**   12:25 |
| **20-12907**   7:4 |
| **2002**   19:11 |

| **2008**   17:22 27:6 |
| --- |
| **2009**   33:20 |
| **201**   4:13 |
| **2011**   19:22 21:4 26:13 |
| **2012**   28:16,17 |
| **2013**   27:11 |
| **2015**   32:10 |
| **2017**   17:14 |
| **2018**   17:18 |
| **2019**   14:10 30:1 34:1 |
| **2020**   13:19 14:11 14:14,21 15:2,2,7 15:8,18 23:14,23 25:10,16 27:22 31:2 33:7,8,23,23 |
| **2021**   2:5 61:25 |
| **21**   1:8,12 3:17 7:3 13:11 14:21 43:10 44:15 |
| **218**   27:5 |
| **223**   19:11 |
| **226**   3:14 |
| **229**   20:2 |
| **231**   19:11 |
| **232085**   33:13 |
| **24**   20:11 |
| **250**   5:3 |
| **266**   26:25 |
| **27**   28:17 56:8 |
| **27,000**   11:21 |
| **2702**   38:11,16 39:10,15 40:13,16 40:21 47:15 |
| **28**   13:4,6,9 16:3 17:5,12 18:19 20:19 26:9 27:23 31:11,24 32:4,5,7 32:19 36:3,9 |
| **28th**   23:23 |
| **2d**   19:7,11,22 21:9 26:13 27:10 |

| **3** |
| --- |
| **3**   17:7 18:3 26:16 32:16 33:18,23 |
| **30**   20:15 33:8 47:9 48:15 |
| **300**   61:22 |
| **304**   19:11 20:2 |
| **30th**   10:16 |
| **31**   20:19 31:3 33:13 |
| **310**   27:10 |
| **319**   27:10 |
| **31st**   15:2 |
| **32**   31:3 |
| **324**   23:21 31:6 |
| **33,518**   11:23 |
| **330**   61:21 |
| **34**   24:21 |
| **341**   39:13 |
| **350**   14:11 |
| **36**   60:6 |
| **394**   17:22 |
| **3d**   27:6 |

| **4** |
| --- |
| **4**   17:9 18:4 19:7 20:24 25:17 26:17 32:17 54:8 |
| **40**   28:5 |
| **407**   33:19 |
| **42**   28:5 |
| **43,656.61**   11:19 |
| **44**   21:4 |
| **4466619**   28:17 |
| **448**   19:22 |
| **458**   21:4 |
| **462**   3:7 |
| **468**   3:4 |
| **469**   3:1 |
| **47**   27:22 35:19 |

| **5** |
| --- |
| **5**   17:10 28:14 32:18 60:25 |

**[503 - administrative]**                                                    Page 2

**503**  41:17,19
  45:22 50:15,19
  51:13,14 53:23
  54:11,16,16 55:14
**513**  3:10
**527**  32:10
**53**  27:22
**544**  27:5
**546**  38:17 41:17
  41:18 46:18 47:15
  51:16 54:7
**55**  21:4
**563**  17:13
**566**  38:8
**569**  17:13
**572**  17:14 26:12
**58**  60:8
**580**  26:13
**5814233**  33:7
**59**  24:1
**593**  33:19
**594**  17:17
**5985427**  33:23

**6**

**6**  17:11 27:23
  32:20 54:8
**600**  33:19
**603**  33:25
**611**  29:25
**614**  8:8
**615**  8:9
**616**  8:9
**618**  17:17
**629**  17:17
**631**  21:8
**632**  7:24
**637**  22:4
**638**  21:23 22:15
**639**  22:15 26:12
**645**  11:17
**65**  35:1
**66**  27:10

**671**  26:24

**7**

**7**  4:20 5:3 32:21
**712**  33:25
**726**  33:25
**75**  24:4 30:15
**7th**  55:18,20

**8**

**8**  30:21 31:4 32:22
  33:13,23 60:8
**820**  17:22
**833**  17:22
**87**  56:7
**8th**  14:21

**9**

**9**  25:17 32:25
  45:22 51:13,14
  53:23 54:11,16
**90**  48:16
**919**  27:10
**961**  39:13

**a**

**abandoned**  42:20
  51:24
**ability**  24:18 29:2
  52:1
**abl**  24:13
**absence**  29:17
**absolutely**  11:12
  11:12 46:23 50:10
  51:22
**abstain**  13:3,5
  15:25 16:1 17:5,6
  17:18 18:2,15
  32:11 33:10,15,21
  36:7
**abstaining**  32:2
**abstention**  16:4,9
  16:10,11,19 17:4
  17:16,20,23 19:8
  28:10 31:16,19,22
  31:23 32:8,14

33:24 34:2,6,12
  35:14,24,25 36:3
  36:5
**access**  17:17
**account**  46:15
**accurate**  7:16
  61:4
**acknowledge**
  28:25
**acknowledges**
  28:19
**acro**  3:14 4:19
  37:19,24 38:9,15
  39:9,23 40:2,14
  41:4 42:7,23 43:4
  43:10,19 44:15,16
  44:21 45:15,19
  47:11,15,23 49:3
  51:25 52:3 54:2
  54:23 55:3,12,15
  55:24 56:14,25
  57:18 60:7
**acro's**  58:1,7
**action**  13:13 15:3
  15:8,15,17,21
  16:1,2,6,12,14,16
  16:25 17:1,6,7,7
  17:10,11 18:3,5,8
  18:9,11,13,15,17
  20:3,5,7,13,18,25
  21:2,16 22:20,23
  23:3,10,16 24:1,3
  24:10,20,23,24
  25:1,2,7,12,19,19
  25:24 26:7,21
  27:2,4,15,21 28:2
  28:9,14,23 29:2,9
  29:14,20 30:3,5,9
  30:11,15,21,23,25
  31:9,10,17 32:6
  33:10,16 34:7,23
  34:24 35:5,9,10
  35:15,15,21 36:4

36:8 60:5
**action's**  21:1
**actions**  14:24
**activity**  28:23
**actual**  11:6 56:17
**adams**  6:15
**addition**  23:8
**additional**  13:21
  24:5,19 25:14
  52:16
**address**  8:22
  18:16 26:6 40:25
  41:11,19 42:3
  43:2 51:13 54:21
  58:18
**addressed**  39:14
  41:7,17 42:22
  55:5,8 57:16
**addresses**  42:3
**addressing**  39:2
**adjudicate**  16:15
  16:21 27:8 28:1,8
  28:14,22 31:10
**adjudicated**  15:22
  17:12 18:10,13
  26:7,22 27:3,4
**adjudicating**  29:7
**adjudication**  26:6
  26:10,23 28:11
  29:19 34:20
**adjustment**  19:16
**administer**  30:11
**administration**
  16:16 19:14 20:23
  21:22 23:11 25:5
  26:18 27:15 29:10
  29:12 32:13 33:16
  34:11,19,21 35:10
**administrative**
  3:15 22:14 24:15
  28:4 29:23 30:16
  37:9,20 40:2,6,7
  41:18 41:...

[administrative - augmentation]                                         Page 3

43:12,16,20 44:24
45:24 49:19 50:9
50:15 51:1 52:16
53:8,16,23 55:13
57:19 58:2 60:8
**admits** 38:20
**adopt** 45:18
**adopted** 38:16
**adv** 1:4
**advance** 44:10
**advanced** 15:14
**advantage** 16:23
**adversary** 3:17
8:12,20 12:25
13:3,5,7 14:1,2
15:14 19:17 37:4
37:6,10
**advisor** 3:11
**advocate** 27:19
**affect** 20:13 34:18
**affiliate** 13:12
**affiliates** 14:7
15:5 23:19
**afternoon** 53:19
**agenda** 7:18,23
8:5,11
**agent** 39:1 40:10
40:12 41:1 42:8
42:17 47:22 49:3
**agent's** 40:8 54:3
**aggregate** 11:24
14:11
**ago** 46:3
**agree** 12:7 43:19
**agreed** 11:16,18
11:20,22 41:22
**agreement** 9:16
11:10 30:22 31:4
33:6
**agreements** 9:7
**agrees** 21:17
**ahead** 8:4,4 46:20
52:5

**al** 1:12,15 3:18,19
5:2
**alia** 14:9 23:24
**alixpartners** 3:11
9:6 11:21
**alleged** 25:14
**alleges** 14:19
**alleging** 14:24
**allocation** 22:15
**allow** 32:24 40:20
**allowance** 3:5,14
22:7 37:20 44:24
58:2 60:7
**allowed** 43:11
**allowing** 40:18,22
**alluded** 43:8
**alternative** 13:5
57:22
**alternatively**
15:24
**amenable** 8:10
**amended** 7:18,23
**america** 26:12,24
**american** 21:7
**amount** 11:17,18
11:19,21,22 14:11
24:1 47:18 49:6
50:3 55:15 56:3
57:21,22 58:3
**amounts** 11:6,6,9
24:6
**ample** 58:1
**analysis** 52:16
**andrea** 4:16 12:3
**anker** 5:6 36:14
36:15,16,23 37:13
**anker's** 37:11
**annexed** 31:5
**antecedent** 19:19
**anticipated** 25:6
**aog** 17:13
**apartment** 42:19

**apologize** 52:25
**appear** 9:10
**appearing** 7:15
**applicable** 32:16
45:21
**application** 3:1,4
3:7,10 10:15,22
10:25
**applications** 8:1
8:14,18,23 9:11
10:10 12:13
**applies** 15:19
**apply** 16:24 17:16
35:25
**appreciate** 7:6,12
44:3,9 45:10,15
58:16
**approached** 46:25
**appropriate**
13:24 18:23 33:25
41:8
**approval** 10:24
25:10
**approve** 8:8
**approved** 23:22
24:22 35:4
**approving** 9:11
9:15 23:15
**argue** 15:15,19
16:9,14,20 20:3
21:5,14 27:12,24
34:20 45:8 49:22
**argued** 23:12
**arguendo** 31:23
34:2 36:5
**argument** 24:25
25:9 30:18 48:1
49:15,19,24 51:4
56:3,4,20 57:6,22
**arguments** 13:18
15:13 56:10,12
57:17

**arises** 23:5,6
**arising** 17:8,9
18:8,9,12,17,18
18:21,22 32:3,3
**arrives** 51:8
**aside** 25:13
**asked** 44:15
**asking** 36:20
**assert** 16:11 42:23
44:23 46:21 53:6
**asserted** 23:4 30:8
32:22 38:15 41:16
44:17 46:24 54:4
54:15,16
**assertion** 20:13
42:8
**assessing** 19:17
**asset** 20:5 22:15
24:12 25:3 34:24
35:6,6
**assets** 19:15 20:22
25:21 29:15 47:4
48:6
**assignment** 30:24
**associates** 33:12
**association** 21:8
**assume** 38:2
**assumes** 14:1
**assuming** 16:13
25:11 31:23 34:2
36:5 46:5
**assumption** 29:1
**attached** 41:2
**attorneys** 4:4,12
4:19 5:2,9,16
**attributable**
55:24
**aty** 3:8
**aug** 33:13
**augment** 20:21
22:20 25:3
**augmentation**
21:2

| | | | |
|---|---|---|---|
| **august** 14:10,11 | 25:23 26:17 27:3 | **bit** 8:14 48:2 | **calendars** 28:19 |
| **authorities** 14:16 | 27:20 28:15 29:1 | 53:22 | **call** 9:14 |
| **authority** 24:8 | 30:8,24 31:8 | **blanket** 51:11 | **called** 22:6 57:3 |
| **authorizing** 23:15 | 32:15,18,21,24,25 | **bockius** 5:15 | **camo** 32:9 |
| **avail** 45:21 | 33:2,12,22 34:9 | **booker** 6:17 | **canada** 27:10 |
| **available** 22:3 | 34:17 35:13,18 | **boston** 5:18 | **candor** 9:17 |
| **avenue** 50:8 | 38:18 40:19 45:22 | **bound** 21:21 | **capable** 29:7 |
| **avison** 27:9 | **based** 14:9 15:21 | **bowling** 2:2 | **capacity** 50:25 |
| **avoid** 38:25 | 16:3 17:7 18:3 | **breach** 23:4 25:14 | **capital** 17:17 |
| **aware** 40:9 | 25:19 42:24 | 29:8 | 26:12 33:6 |
| **awkward** 53:22 | **basis** 17:10 18:4 | **breached** 14:24 | **care** 43:21 |
| **b** | 32:19 53:15 55:4 | **break** 37:8 | **carefully** 38:3 |
| | 58:1 | **breaking** 52:23 | **case** 1:3,4 7:4 |
| **b** 2:21 13:7,7,10 | **bay** 17:21 | **breath** 31:18 | 10:23 16:7 17:8 |
| 16:3 18:19 19:12 | **bears** 27:7 28:24 | **brent** 5:13 52:10 | 18:8,12,18,22 |
| 24:12 32:5,7 36:9 | 33:11 | **brian** 6:7 | 19:10 21:1,24 |
| 41:17,19 45:22 | **beginning** 43:8 | **brief** 14:3 20:11 | 23:5,6 29:18 31:2 |
| 50:15,19 51:13,14 | 44:5 | 20:19 27:21 35:1 | 32:4,21 33:12 |
| 53:23 54:11,16,16 | **behalf** 7:15,22 | 42:22 57:17 | 34:17 35:2 38:7 |
| 55:14 | 37:11,24 43:25 | **briefed** 23:9 | 38:11,12,19,24 |
| **b.r.** 17:13,17,22 | 44:1,3 52:10 | **briefly** 54:19 | 39:2,4,19 40:1,4,5 |
| 21:4 29:25 32:10 | 53:21 57:18 | **brings** 58:12 | 40:18,19,22 41:5 |
| 33:19,25 | **belatedly** 53:6 | **bulk** 24:22 | 41:6,22 42:1,14 |
| **back** 15:17 16:2 | **believe** 9:13 24:10 | **burden** 17:15 | 47:17 51:2 52:14 |
| 26:3 37:14 44:15 | 45:11 | 27:7 33:1,24 | 55:23 |
| 44:16 52:2 | **believes** 53:3 | 35:23 53:2,4,8 | **cases** 7:4 14:2 |
| **backdrop** 50:6 | **bell** 33:12 | **burgeoning** 28:25 | 18:20 20:7,8 23:9 |
| **background** | **belonged** 48:6 | **burke** 6:1 | 28:24 29:11,13 |
| 13:25 14:2,4 | **bench** 12:21 13:24 | **business** 14:9 15:1 | 30:12,16,20 31:8 |
| 28:18 | 14:4 36:11 | 47:5 56:18 | 41:12,14,15,17,18 |
| **backlog** 26:13 | **benefit** 24:24 30:6 | **buyer** 10:18 | 41:22,25 42:11 |
| 27:13 | 40:20,23 41:10 | **c** | 44:5 47:2,9 51:12 |
| **bad** 51:19 | 42:24 44:14 49:15 | | 58:20 |
| **bank** 5:16 26:12 | 49:21,22,23 50:1 | **c** 2:22 4:1 6:23 7:1 | **cash** 22:3 24:1 |
| 26:24 | 50:1,17 52:16 | 13:4,6 16:3 17:4 | 42:12 54:7 |
| **bankr** 17:14,17 | 55:4 56:21 57:14 | 17:13,24 18:7,14 | **cashman** 6:7 |
| 17:22 33:20,23,25 | **benefits** 56:24 | 24:14 26:8 31:11 | **cat** 36:21 |
| **bankruptcy** 1:1 | **benjamin** 5:25 | 31:13,16,24 32:4 | **cause** 32:6 35:15 |
| 2:1,23 15:7 16:17 | **bernstiel** 6:4 | 36:3,8 47:15 | **ceased** 55:18,20 |
| 17:5,8,9 18:8,9,12 | **best** 16:6 24:11 | 51:16 54:7 61:1,1 | **center** 5:3 |
| 18:18,18,20 19:2 | 58:18 | **calculus** 45:2 | **century** 1:8,12 |
| 19:3,10,10,25 | **bgc** 27:9 | **calendar** 7:13 | 3:17 7:3,9,14,14 |
| 20:1 21:1,3 22:14 | | 26:14,14 27:13,14 | 14:21 4... |
| 23:1,2,5,6 25:20 | | | |

certain  13:12 15:5
  23:18 34:8
certainly  11:4
  47:24 50:13
certified  61:3
challenge  57:18
chambers  9:5
  11:15
change  50:7
channel  33:12
chapman  2:22 7:3
  9:1
chapter  14:2 15:6
  16:7 20:7,8 23:6,8
  24:14 28:24 29:11
  30:12,20 31:2
characterized
  57:11
chart  11:7
chase  5:16 49:5
  53:21
cir  19:7,11,22
  21:9 26:13 27:6
circuit  19:23
  20:20 21:18 22:9
  26:11,20 27:1
  39:13,16 40:17
  41:6 42:1
circuit's  21:6,12
circumstances
  21:9 22:10
cited  39:11
citing  20:15 31:3
city  41:6
claim  10:18 17:7
  18:3 21:11 23:4
  25:3 32:6 33:17
  34:12 37:9,20
  40:3 41:8,16,18
  41:23 42:15,24
  43:5,12,16,20
  44:22,24 45:20,21
  45:24 47:1,18

49:19 50:15,15,19
  51:1,7,7,14 53:16
  54:16,16 55:14
  57:19 58:2,3
claimants  22:2
claimed  29:19
  30:10
claims  15:22
  16:24 20:9 22:8
  23:13,17 24:15
  27:9 29:8 30:3,9
  32:23 42:13 47:16
  50:9,9 51:10
  53:24
clarify  54:1,14
clarity  38:19
classic  49:18
clear  39:10 41:13
  49:13 51:21 54:9
client's  53:24
clients  54:12
closed  14:16 35:5
  48:15,16,18,19
closing  10:16
  47:11
closings  51:25
closure  30:16 31:1
  31:7
closures  14:18
coal  32:9
code  15:7 17:9
  18:9,18 19:10
  23:7 38:18 45:22
  47:16
coffee  12:20
cohen  6:8
collateral  48:2,6
  54:7
colleague  8:22
collectively  13:1
  23:19
column  43:6

come  47:12 56:25
coming  10:6
comity  32:1
comm  3:8
commenced  17:11
  18:5 32:17 35:15
commencement
  33:2
comments  12:7
  56:10
commercial  47:15
committee  3:12
  5:9 13:13 21:5
  23:18 44:19,23,25
  45:11 49:8,10
  52:11
committee's  13:17
committees  52:12
company  38:10
comparative
  26:23
compared  27:18
compel  16:4 23:9
compelling  33:9
compensate  14:25
  56:14
compensation  3:5
  3:8
competent  16:21
complaint  14:22
complexity  26:15
  29:4
conceded  25:11
  57:20
concept  40:2
concern  50:7
concerned  49:14
concerning  19:13
concerns  29:18
conclude  12:14
concluded  47:9
  59:1

concludes  31:9,15
  36:2,12
conclusion  23:10
  36:1 39:20 42:5
  46:6 58:12,21
conclusions  19:4
conditioned  22:6
conditions  14:12
conduct  49:7
conducted  7:7
conference  3:19
confirm  11:10
confirmed  30:20
  43:17 58:4
congress  51:12
conjunction  16:16
connection  10:21
  16:7 25:10 30:8
  33:11 51:24 54:5
consider  19:19
  32:12 33:15
consideration
  24:19
considered  13:15
  28:6 34:15 57:14
considering  26:11
  34:3
consistent  36:10
contained  22:6
contention  43:4
contesting  42:7
contingent  24:12
continue  24:10
  26:5 57:25
continued  54:24
  55:1 56:15 57:13
continuing  36:17
contract  19:18,19
  20:21 22:25 23:4
  25:19 29:8
contracts  21:19
  21:21

**contractual** 15:16
**contrast** 21:24
  27:24
**control** 24:24
**convert** 50:8
**cooney** 6:21
**core** 15:21 16:12
  16:14 18:21 19:1
  19:2,9,13,18,23
  20:1,4,14,18,24
  20:25 21:11,16,19
  22:13,14 23:3
  25:1,23,25 32:22
  32:23 33:18,18
  34:14,14 35:21
**corp** 19:7 32:10
  41:14 42:11,13
**corporation** 19:6
  19:22 48:9
**correct** 7:23 12:6
  53:9
**cost** 52:15 56:18
**counsel** 3:2 8:12
  13:18 25:11 30:17
  54:2,21
**count** 52:24
**country** 61:21
**county** 13:8
**couple** 46:2
**course** 39:23
  43:20 44:8,8 49:6
  49:23 50:1
**court** 1:1 2:1 7:2,8
  8:2,4,13,24 9:17
  9:24 10:1,5,10,22
  11:1,8,25 12:4,10
  12:19,24 13:3,8,9
  13:15,19 14:1,3
  14:23 15:9,9,9,11
  15:17,23,25 16:1
  16:2,15,17,21,22
  16:23,23 17:2,11
  17:12,19,24 18:5

18:10,11,14,15
19:2,3,5 21:17
22:23 23:22 24:2
24:22 25:7,24,25
26:5,6,8,17,22
27:3,3,5,8,12,15
27:17,19,21 28:1
28:6,8,12,12,14
28:19,19,21,22
29:1,2,3,6,7,9,12
29:15 31:9,10,15
31:17,21,25 32:6
32:14,18,18,25,25
33:2 34:4,5,7,8,10
34:11,15,20 35:4
35:16,20,22 36:2
36:5,6,15,19
37:14,16 38:1
42:3 43:1,7,21,24
44:4,10,13 45:17
46:2,5,12,19,21
47:20,22 48:10,23
49:2 51:3,17 52:4
52:6,20 53:12
54:13,17 55:9
56:2,11 58:10,13
58:17 60:6
**court's** 15:11
  22:14,24 25:10
  26:13,14 27:14
  33:1,22
**courts** 17:5 19:18
  20:16 26:10 28:21
  32:1,7,12 33:9,14
  41:17
**covenant** 25:14
**coverage** 14:10
  20:17 22:12,16
**covid** 14:14 15:2
  28:20
**crazy** 36:17
**create** 7:16

**created** 42:5
**creditor** 3:8 19:16
  41:23 43:14 44:21
  45:20 50:23 51:13
  53:2,3,5,8,11
**creditors** 3:12 5:9
  13:14 20:10 22:4
  22:15,19,22 24:17
  34:22,25 35:8
  40:23 45:17 46:1
  49:8,10 50:8
  52:11,19
**critical** 39:2 54:23
**crucial** 20:8
**cube** 29:17
**cup** 12:20
**custom** 48:20
  56:22
**cut** 49:5
**cutler** 5:1
**cynthia** 6:4

**d**

**d** 7:1 24:15 33:20
  60:1
**dairy** 41:14,22
  42:11
**damage** 14:9
**damages** 15:4
  25:13
**dana** 41:14 42:11
  42:13 48:9
**danger** 50:5
**daniele** 6:2
**date** 15:18 47:10
  48:15,17 55:19,21
  57:5 61:25
**dated** 23:23
**david** 6:11
**davies** 5:20 47:25
  53:18,19,21
**day** 10:15 58:23
**days** 47:9 48:15
  48:17 56:7,8

**de** 19:5 53:10
**debate** 49:18
**debtor** 1:10 4:4
  13:11,12 14:6,6
  14:16,17 15:5,8
  15:15 16:8,8
  19:16 21:5 23:12
  23:13 24:5 33:5
  38:13,19 40:3,5
  43:25 44:15 46:8
  50:24 52:13,18
  53:2
**debtors** 3:2 7:23
  8:7 13:16 16:7,17
  18:12 20:3,5,6
  22:8,20 23:6,8,11
  23:14,16,18,19,25
  24:9,11,17,18,24
  24:25 25:2,4,5,11
  25:15,20,21 27:12
  27:16,16,20,24
  28:7,23,24,25
  29:10,13,14,19
  30:2,7,8,10,13,16
  30:18,22 31:2,8
  33:12 34:19,21
  35:4,5,11 38:11
  38:12,13,22,25
  39:4,5,15,18,19
  39:21 40:1,11,18
  40:20,22 41:3,4,7
  41:8,12 42:6,7,16
  42:18,19,25 43:4
  45:12,15,17,23,25
  46:1,13,16 47:23
  48:1,4,6 50:3,18
  50:21,23,24 54:21
  55:23,25 56:12,14
  56:18,19,23 57:10
  57:12
**debts** 24:14
**december**
  13:19 23:

25:9,16 27:22
31:2 55:20
**decided** 36:22
**decision** 12:21
13:23,24 33:21
36:11 39:13,16
40:25
**declaration** 13:16
**declaratory** 22:10
**defeasible** 40:13
41:2 42:6
**defeat** 40:21
**defeated** 51:11
**defendants** 1:16
12:25 13:1,2,17
14:8 15:15,19,24
**deficiency** 20:9
**defined** 23:20
**defrauded** 38:10
39:9 40:17
**degree** 19:20
32:20 34:15
**del** 33:20
**delaware** 34:10
**delay** 28:16 29:10
**delivered** 9:5
36:21 39:5 50:20
50:22
**delivering** 13:24
**demand** 38:16,21
38:23 39:14,17,22
39:25 41:9 46:7
48:24 51:15,18
57:10
**demonstrate** 28:7
35:23 57:19
**demonstrating**
27:8
**denied** 17:1
**denise** 5:23
**dennis** 6:20
**department** 1:8
1:12 3:18 4:11 7:4

13:11 14:21
**depends** 31:8
**depth** 42:3,4
**desire** 43:14
**determination**
22:13 39:3
**determine** 18:20
22:11
**determined** 16:24
21:18 26:19 35:20
39:16
**determines** 36:7
**determining**
17:18 32:11 33:15
**detriment** 45:25
**deutsche** 33:5
34:4
**devastating** 43:9
**developments**
23:8
**dialed** 37:6
**different** 54:6
**differently** 20:25
46:12
**difficulty** 32:16
**diminished** 28:2
**diminishes** 30:7
**directed** 36:10
**directly** 20:1
22:13
**disagree** 20:12
**disagreement**
17:25
**disclosure** 8:7
58:19
**discount** 45:5
**discretion** 33:22
36:7
**discuss** 31:21
**discussed** 30:2
**discussion** 41:24
**discussions** 7:25

**display** 3:14 4:19
37:19,25 38:10,15
39:9,24 40:15
41:4 42:7,23
43:19 45:15,19
47:11 55:3 56:23
60:7
**display's** 40:2
43:4 54:24 55:15
**displayed** 55:25
**disposition** 13:20
**dispute** 15:16
18:6 19:18 20:21
21:10,18 22:25
23:1 31:13 38:14
38:24 40:10 41:20
42:2 57:23
**disputes** 20:18
21:20
**distancing** 14:15
**distinction** 41:13
**distinguish** 49:17
**distinguishable**
21:6,14 22:17
51:5
**distinguishes** 19:1
**distinguishing**
42:10 54:20
**distribution** 20:22
22:18,21 24:16
25:22 35:7
**distributions**
34:22,25
**district** 1:2 9:11
15:9,10,11 19:5
20:17 28:12 34:4
34:10 41:13
**doc** 3:1,4,7,10,14
**docket** 7:24 12:15
23:20 29:1 31:6
33:1 36:25 38:8
**dockets** 8:8

**documents** 23:23
24:9 30:18
**dog** 54:12
**doing** 11:4 36:19
**doors** 48:15,16
**dorr** 5:1
**doubt** 56:16
**dph** 19:21
**drink** 37:8
**drive** 5:10
**drop** 8:12,15,19
37:7 56:9
**due** 15:1
**d'antonio** 6:20

e

**e** 2:21,21 4:1,1 7:1
7:1 60:1 61:1
**e.d.** 17:22
**e.d.n.y.** 33:23
**early** 7:19 28:24
**earmarked** 22:1
22:21
**easier** 57:20
**economic** 43:9
**ecro** 2:25
**effect** 20:23 25:4
32:12 33:16 34:11
39:15
**effects** 15:1 39:14
**efficient** 32:13
34:19,21
**efficiently** 12:12
**either** 51:16 52:13
**elect** 16:1
**element** 17:19
50:18
**elements** 15:20
17:24 18:1,7
**elevate** 45:24
**elevating** 50:14
**eleven** 4:5
**emergence**
31:1

**emphasis** 27:25
57:2
**emphasize** 27:16
**employ** 32:8
**empowered** 19:3
**enacted** 51:12
**encourage** 12:19
**ends** 31:20
**energy** 33:6
**enforcement**
32:25
**engaged** 10:19
**enter** 9:15 18:23
24:8
**entered** 32:24
**entertainment**
17:13 29:25
**entirely** 7:7 22:1
22:17 50:6 53:4
**entitled** 30:23
42:23
**equitable** 22:18
31:22 32:7,9
**equitably** 13:7
16:2
**equity** 23:19
**essence** 33:9
**essentially** 15:21
47:4 50:14
**establish** 20:14
**estate** 10:20 19:14
19:15 20:14,22,23
21:3,22 22:9,20
23:2 24:2 25:5,15
25:22 26:18 30:7
32:14 33:17 34:11
34:21 35:7,11
39:15,18,19 40:23
41:10 42:25 49:16
49:18 50:3 53:10
56:19 57:14,25
**estates** 16:17 20:5
23:12 24:11 25:4

27:16 30:9 34:19
45:25 50:18 55:14
**et** 1:12,15 3:18,19
5:2
**evaluating** 26:10
**event** 30:14 31:1
35:24
**everybody** 7:4
10:6 12:20 36:12
58:22
**evidence** 38:7
55:22
**evidentiary** 56:5
**exactly** 40:24 53:9
**exceed** 24:20
30:15
**exception** 43:15
**excess** 24:4
**exclusions** 14:13
**exclusively** 26:21
**exercise** 36:7
**exhaustive** 19:12
**exhibit** 31:5,5
**exist** 51:11
**existed** 49:20
**existence** 33:4
57:7
**existing** 25:20
**exists** 22:25
**expend** 45:3
**expense** 3:15
37:20 41:8 45:25
50:9,15 51:1
53:23 55:13 57:19
58:2 60:8
**expenses** 10:17
11:19 24:15
**expertise** 26:16
29:5
**expressly** 54:8
**extension** 15:19
16:13,18

**extent** 32:14
34:13 35:12
**eye** 58:23
**ezra** 6:19

**f**

**f** 2:21 27:10 61:1
**f.2d** 39:13
**f.3d** 19:7,11 20:2
20:24 21:8,23
26:12,25 27:5
**f.app'x** 19:22
**faces** 27:12
**facilitate** 29:24
34:20
**facility** 24:13
**fact** 8:16 10:23
19:4 23:1 35:9
38:8,9 41:22
42:13 44:19 46:15
46:24 47:11 50:6
51:6,10 55:24
57:2,4,6
**factor** 29:6 35:13
**factors** 16:4 26:11
28:6 31:12 32:12
33:15 34:3,5,9
**facts** 14:4 21:13
22:17 43:2 46:24
47:7 48:11 51:4,4
**fail** 28:25
**failed** 28:7
**failing** 14:25
**fair** 12:22
**faith** 25:14
**falls** 22:23
**familiarity** 14:1
**family** 38:10
**far** 40:2
**faster** 27:25 28:11
**favor** 34:6 35:22
**feasibility** 32:23
**feasible** 39:6

**february** 2:5
61:25
**federal** 5:17 17:10
18:4 26:14,24
28:14,19,21 35:18
**fee** 3:1,10 7:25
8:14,17,22 9:11
10:10,15,22,25
**feedback** 10:3
**fees** 9:15 10:17,24
11:17,18,21,22
52:16
**fi** 32:9
**fiduciary** 44:23
**figure** 10:5
**file** 10:14 49:9,10
52:14
**filed** 8:7 12:25
13:16 14:22 15:5
15:17 18:2 23:14
29:16 31:5 45:1
52:13,22,23 57:17
**filing** 29:16 47:3
**filter** 36:21
**final** 10:14,22,24
**finally** 35:20
42:10
**finance** 26:12
**financial** 3:11
**find** 17:20 35:22
45:17 49:5 53:14
53:22 57:7
**finding** 21:9,15
28:21 53:15
**findings** 19:4
**finds** 17:19,24
18:11 22:23 25:24
28:7 29:12 34:5
45:15
**fine** 12:14 36:16
**fingertips** 9:1
**firm** 7:2

[first - honor]

| | | | |
|---|---|---|---|
| **first**  3:1,4,10 8:15 13:25 18:16 22:6 29:14 41:16 50:19 57:9 | **frost**  5:20 47:25 53:18,19,21 | 45:6 47:9 49:5,11 50:7 51:24 52:6,7 53:12,15 56:2,24 58:5 | **happy**  9:22 11:13 36:16 56:9 58:23 |
| **fit**  51:4 | **fruit**  33:19 34:10 | **good**  7:2,21 8:2,21 | **hard**  44:6 58:13 58:15 |
| **five**  48:13 | **fruits**  40:20 | 8:24 9:1 12:2,4 | **head**  44:13 |
| **flaw**  16:22 | **fulfilled**  53:4 | 25:14 37:11,22,23 | **hear**  10:3 18:20 |
| **flip**  51:5 | **full**  24:14,15 25:12 44:18 | 44:11 45:7 53:19 53:20 57:24 | 19:2 37:11 49:11 50:13 |
| **floating**  39:1 51:11 | **fully**  23:9 29:7 | **goods**  38:12,21,22 38:25 39:5,6,8,9 | **heard**  12:13 |
| **florida**  38:17 | **function**  20:1 22:14 25:23 | 39:17,19,21,24 40:1,6,7,9,11,12 | **hearing**  3:1,4,7,10 3:14,17 7:7,9,10 |
| **flow**  23:2 | **fund**  33:7 | 40:19,23 41:4,5 | 10:15 12:14 13:3 |
| **flynn**  6:22 | **fundamentally**  57:24 | 42:9,12,15,16,20 46:7,10,13 47:3 | 13:5,18 15:25 17:5 18:15 25:9 |
| **focus**  29:9 | **funds**  22:9,21 57:25 | 47:12,13,16 48:4 50:22 51:22,24 | 25:16 27:22 31:3 32:2 33:16 35:3 |
| **focused**  34:8 | **further**  30:2,7 55:5 57:23 | 54:3,8 55:23 56:15,16,17,23 | 37:5 52:21 54:23 56:5 58:6,20 |
| **focusing**  57:4 | **future**  30:16 | 57:11,13 | **heavily**  29:6 35:14 |
| **folks**  36:24 37:17 37:18 | **g** | **governmental**  14:16 | **held**  13:18 20:17 20:20 26:20 27:1 |
| **following**  26:11 35:3 | **g**  7:1 | **grace**  33:13 | 33:14 39:1,5,21 39:24 41:23 |
| **footnote**  54:8 | **gas**  33:6 34:4 | **grant**  55:12 58:1 | **hereinafter**  14:23 |
| **footnotes**  9:9 | **general**  20:22 22:20 24:17 25:22 | **granted**  36:5 37:2 43:20 58:8 60:6,8 | **highlighted**  30:17 |
| **foregoing**  31:14 31:20 36:1,11 | 34:22 35:7 43:14 45:24 46:1 | **grateful**  9:19 11:3 | **highly**  34:17 |
| 61:3 | **getting**  10:3 | **great**  8:3 10:8 11:1 44:4 | **hilco**  48:21 |
| **form**  9:10 32:22 | **gindi**  23:20,25 30:6 | **greater**  29:3 | **hindered**  28:15 |
| **formal**  13:23 | **give**  38:3 41:24 44:6,15 45:7 | **green**  2:2 | **hinge**  34:22 |
| **forth**  14:13 26:11 58:7 | 50:25 58:13 | **greenwich**  5:3 | **hinges**  35:8 |
| **forum**  26:16 27:25 28:11,13 | **given**  44:7 47:10 | **gribble**  28:16 | **hold**  48:23,23 |
| 29:5 33:3 | **giving**  13:20 | **ground**  32:7 | **holders**  23:19 |
| **forums**  26:24 | **glitch**  41:24 | **group**  22:3 | **holding**  21:6,13 21:15 52:19 53:2 |
| **forward**  24:25 58:19 | **global**  17:17 | **guess**  45:6 50:14 | **holdings**  19:22 29:25 |
| **found**  7:24 22:9 29:18 | **go**  8:4,4,18 17:3 46:20 52:1,5 55:5 | **h** | **holdover**  42:18 |
| **four**  11:3 18:1 26:11 31:12 37:14 | **goes**  40:3 | **hale**  5:1 | **holds**  40:10,12 42:5 |
| **frankly**  56:13 | **going**  8:13 11:9 12:21,22,23 13:21 | **hand**  23:18 52:8 53:17 | **hollow**  25:4 56:21 |
| **fraud**  40:21 | 24:25 26:2,5 37:7 | **handling**  12:11 | **hon**  2:22 |
| **fresh**  12:21 | 37:9,19,21 38:3 43:24 44:6,21 | | **honor**  7:2... 8:10,22... |

9:25 10:2,14 11:4
11:13,24 12:2,6
12:18 36:14,16
37:13,23 38:5,6,9
38:24 39:20 43:18
43:23 44:1,9
45:10,14,19 46:9
46:14,23,25 47:6
47:10,14,24 48:8
48:12,20 50:11
51:9,20 52:5,9,12
52:15,25 53:3,9
53:19,21,22 54:10
54:14,19 55:8,11
55:22 56:9 58:9
58:11,16,25
**honor's** 9:13
**honored** 14:19
**hope** 9:1 36:17
**hopefully** 9:20
**hunt** 54:12
**husney** 6:19
**hyde** 3:25 61:3,8
**hynes** 6:24
**hyper** 49:7 56:13
57:6

### i

**i.e.** 25:3
**ice** 29:17
**identifiable** 38:21
**identified** 34:4,9
52:15
**identify** 7:14,14
**ignore** 41:9
**ignores** 57:6
**immediate** 24:16
43:11
**immediately**
46:17 48:4
**impact** 21:21
23:11 35:10 43:9
**impacted** 22:14

**impermissible**
56:14
**implicate** 25:22
**importance** 28:1
**improper** 16:18
17:21
**inactivity** 27:18
**inapplicable**
16:13
**inclined** 55:12
56:1
**included** 10:24
47:6
**includes** 9:5
**including** 19:13
32:12
**incorporate** 37:2
**incorporating**
58:6
**increase** 25:21
**indemnity** 21:8,25
**independent**
19:21 22:25 25:20
**indicate** 36:25
**indicated** 56:12
**indiscernible**
40:18,25 41:25
**indisputably**
35:15
**inequitable** 56:13
**informal** 12:8
**informally** 11:16
**informed** 26:19
26:23 29:15 47:6
**informing** 10:22
**injury** 22:2,8
**inquiry** 26:20
28:9 31:21
**insolvent** 38:13,20
**installed** 48:14
55:18,20 57:4
**instance** 50:19

**insufficient** 20:23
23:2
**insurance** 1:15
3:19 5:2 10:16,18
14:7,8,13,20,23
14:25 15:3,8,15
15:25 16:6,12,14
16:15,21,25 17:1
18:11,13,15,17
20:3,4,7,17,18
21:11,16,19,21
22:1,5,16,19,23
23:3,10,16 24:1,3
24:10,20,23 25:1
25:2,3,7,12,18,24
26:7 27:14,21
28:8,22 29:2,9,14
29:20 30:3,5,9,11
30:14,21,23,25
31:9,10,17 34:7
34:23,24 35:5,9,9
35:14,21 36:4,8
60:5
**insured** 14:7
**insurer's** 12:22
35:19
**insurers** 13:1
14:19,23,24 20:12
20:16 21:12,17
22:12 23:13 27:24
28:4,10 29:21
30:17 31:21 35:17
35:22
**integral** 20:6
**intensive** 50:6
**inter** 14:9 23:24
**interest** 9:17
10:17,19,23 13:20
21:24 23:16,25
24:11 25:13 30:23
31:25 32:1 35:4
39:6,21 40:8,10
40:12,13 41:21

**interests** 39:3
**interfere** 30:15
**interim** 3:1,4,7,10
10:25 54:7
**interruption**
14:10
**inure** 24:5,23 30:6
**inventory** 47:3
50:22 56:1
**investors** 28:16
**invoices** 55:15
**involve** 22:18
**involved** 19:18
21:25
**involves** 33:3,17
34:12 35:16 51:7
**isabella** 6:17
**issue** 13:23 18:16
22:5,16 26:6 29:8
37:9 38:12 39:2,6
40:11 43:21 51:13
52:17 53:23,24
54:6
**issued** 14:8,15
48:24
**issues** 8:16 16:5
16:22 22:18 26:15
29:4 32:15,15
33:18 34:13,13
35:13,13,16 42:22
54:22
**item** 8:11

### j

**james** 4:23 37:23
**jeff** 6:6
**jeffrey** 6:8
**jelisavcic** 6:13
**jersey** 38:17
**joanna** 6:18
**job** 44:4 45:8
**john** 6:16,16
**join** 36:24

**joinder**  13:17
  52:23
**joined**  13:13
**jp**  5:16
**jpmorgan**  46:25
  53:21
**judge**  2:23 7:2 9:1
  42:14
**judges**  18:20
**judgment**  22:10
**judgments**  18:24
  32:24
**julia**  5:20 53:21
**july**  14:21 15:18
**junior**  53:24
  54:12
**jureller**  6:16
**jurisdiction**  17:10
  18:4 20:14 22:24
  26:1
**jurisdictional**
  32:19
**jury**  33:4
**justice**  4:11 31:25

**k**

**kaitlyn**  6:12
**kathryn**  6:10
**keep**  7:5 10:6
  58:23
**kept**  46:8
**kind**  49:5
**klamser**  6:9
**klestadt**  5:24
**know**  40:5 44:16
  44:21,22,25 45:3
  45:13 47:2,12
  48:8,16,22 49:4,4
  49:18,24,25 50:3
  50:5,13 51:3
  52:22 53:16 54:4
  55:21
**koreag**  39:13 40:5

**kozlowski**  6:5
**kweskin**  44:2,4
  45:8

**l**

**lack**  32:13
**laid**  41:1
**landlord**  40:4
**landlords**  52:1
**large**  47:2
**largely**  35:8
**larger**  27:13
**largest**  20:5 25:2
  34:24
**late**  52:24
**laud**  40:2
**lauren**  6:3
**law**  15:22 16:5
  17:3,7 18:3 19:4
  23:3 25:19 29:8
  30:9 32:2,15,17
  32:23 33:11,17
  34:13,13 35:12,15
  35:17,18,18 50:7
  51:16 53:13 54:10
**laws**  16:24 39:11
**ldc**  32:9
**leaving**  25:13
**ledanski**  3:25 61:3
  61:8
**left**  32:25 44:2
**legal**  61:20
**lender**  44:17
  46:19,21,23 47:17
  47:17 48:7 49:13
  51:18,21,22,23
**lender's**  44:18
**lenders**  20:9
  42:13 46:18 47:19
  54:5
**lengthened**  29:13
**lewis**  5:15
**lien**  39:1 41:2,23
  42:8 44:17 46:21

46:24 48:5 51:23
  54:3
**liens**  42:5 46:18
  51:11 54:9
**lifland**  6:3 42:14
**light**  8:16 56:10
**lightly**  29:22
**likelihood**  33:1
**limitations**  14:12
**limited**  33:11
**line**  60:4
**lines**  1:15 3:18 5:2
  21:7,8,13,15,18
  21:22,25 22:5,17
  25:17 27:23 31:3
**liquidating**  47:4
**liquidation**  19:15
  28:2 29:16,22
  30:19 44:17 47:8
  56:23 58:4
**list**  19:12
**listen**  37:6 51:25
**litigate**  45:3 57:25
**litigating**  50:4
**litigation**  31:1
**little**  8:14 10:3
  12:23 17:25 21:3
  35:10 52:24
**llc**  1:8,12 3:18
  4:19 13:11 14:22
  17:17 28:16
**llcs**  3:14 60:7
**llp**  3:2,8,11 4:3,18
  5:1,8,15
**loan**  48:3
**locations**  14:17
**long**  7:11 28:14
**longer**  10:19
  28:13 31:8 35:2,8
  42:19
**look**  12:15 41:25
  48:10 51:17 54:25
  57:9

**looking**  58:19
**loom**  33:19 34:10
**loss**  25:12
**losses**  14:18 15:1
**lost**  37:17 46:2,2
**lot**  11:2 57:2
**loveland**  5:25
**lowenstein**  3:8 5:8
  5:10 9:6 11:20
**lp**  33:7

**m**

**ma**  5:18
**magnetek**  33:19
**main**  32:21 34:16
**major**  21:20
**majority**  34:5
**making**  48:24
  49:24
**mandate**  21:15
**mandated**  19:8
**mandatorily**  36:6
**mandatory**  15:19
  16:4,9,11,13,18
  17:4,16,20,23
  28:9 31:16,23
  34:2 35:24 36:3
**manner**  27:9
**march**  14:14 15:2
**marigold**  42:1
**mart**  41:14,22
  42:11
**marte**  5:23
**marwil**  6:6
**master**  32:9
**matter**  1:6 21:11
  54:10 57:25
**matters**  7:13
  12:12 19:9,9,13
  20:19 32:24
**matthew**  4:8 6:1
  7:22
**maximized**

maximizes  24:12
maximum  25:16
mcclesky  17:21
mcglynn  6:10
mean  28:11 40:9
  45:19 46:6,22
  47:22 48:24 49:5
  49:8,18 50:17
  51:6
meaning  26:8
  31:11
meaningful  24:16
means  24:13,14
  55:25
meet  53:8 56:17
melting  29:17
memorializing
  23:24
mention  10:1,11
mentioned  38:6
  52:12
mere  20:13
merely  53:7
met  15:21 31:16
  35:23 36:4
mezzanine  33:7
michael  6:24
mid  14:14
million  14:12 15:4
  24:1,4 25:13,16
  30:15
mineola  61:23
minimis  53:10
minute  37:8 50:17
minutes  37:14
misconstrued
  54:2
misplaced  27:25
misunderstanding
  53:1
mix  8:13
modified  38:17

moment  11:13
  26:2,3 46:15
moments  46:3
monetize  25:2
monetized  23:13
  34:24 35:6
money  50:3
month  55:19
months  27:17,19
  28:24 55:21
morgan  5:15,16
morning  7:2,3,12
  7:13,19,21,24
  8:24 9:1,5 12:2,4
  37:22,23 53:20,20
motion  3:14 8:7
  12:22,24 13:2,14
  13:15,16 16:9,25
  17:6 18:2 20:14
  23:9,14,15,20,22
  24:21 31:5 35:3
  36:4 37:1,19 38:1
  40:9 47:11 58:1,7
  60:5,7
movant  33:24
moving  58:20
multibank  17:16
mute  7:5 10:7
mutual  21:7
myer  10:17,19
myers  10:1,8,14

n

n  4:1 7:1 60:1
  61:1
n.a.  5:16
named  14:7
narrow  21:13
nasser  33:22
nature  32:16
nearly  30:4,4
necessarily  28:11
necessary  56:17

need  29:19 30:10
  54:6 56:14 57:19
neglected  10:1,11
  10:13
neither  23:5 54:22
nervous  55:11
networks  19:6
  20:15
new  1:2 2:3 4:6,14
  4:21 5:4 9:20 13:8
  13:8 15:10 36:16
  38:16,17
nicole  6:5
nj  5:11
non  13:12 14:6
  15:21 16:8 19:2,8
  19:12 20:18 24:24
  25:25 32:18 33:5
  33:18 34:14 35:21
  44:19
normal  43:19
notable  44:19
note  27:10 29:21
noted  28:12 35:2
  40:17
notice  10:21 43:1
noting  28:25
novel  40:2
novo  19:5
number  7:13 57:7
numbers  9:9,20
  12:6
numerous  32:12
ny  2:3 4:6,14,21
  5:4 61:23

o

o  2:21 7:1 19:14
  61:1
object  40:21
  44:22
objected  44:20
objection  13:17
  44:23 45:1 49:10

52:22 53:7
objections  11:15
  12:9
objects  13:14
obligated  46:13
  46:14
obligation  39:7
  41:3 55:3
obligations  14:19
  22:12
obtained  30:5
obviously  53:14
  53:14
occupancy  40:6
occupies  40:5
occurred  49:20
oct  33:23
october  55:18
oel  33:5 34:4
offensive  49:7
official  3:11 5:9
  9:10 13:13 52:10
offs  9:8,8 11:24
oh  11:12 52:25
okay  8:13 11:1,13
  26:5 36:12 37:5
  43:7,21,24 52:7
  53:12 54:17 58:17
old  61:21
onset  14:14
operating  55:18
  55:20 56:18
opinion  36:21
opportunities
  33:7
opportunity  38:3
  45:7
oppose  16:8
opposing  17:15
  27:7
opposition  20:11
  20:19 27:5,25
  49:6

oral  25:9 30:18
order  9:4,15,18
  11:14 12:15 15:12
  22:11 23:15,23
  30:11 34:25 36:10
  36:24,25 37:3,6
  54:8 58:5
orders  14:15
  18:24 58:24
organize  52:1
originally  23:12
  25:6
orion  19:5,6 20:15
  20:20,24 21:5
outcome  20:8,21
  24:3
outside  23:5 51:15
outstanding  8:16
overwhelming
  34:5
owed  47:18 53:5
  53:11
owned  38:10
owner  39:25
owners  21:7

          p

p  4:1,1 7:1
package  48:2
page  25:17 27:23
  31:3 54:8 60:4
paid  24:2 43:14
  43:16,19 44:18
  53:5,11 54:5
pandemic  14:15
  15:2 28:20
papers  39:11 41:1
  41:7 45:18 54:22
paragraph  20:11
  20:15 24:21 28:5
  35:1,19 43:2 47:7
  47:8 48:11
paragraphs  20:19
  27:22

parmalat  26:12
  26:24 28:6
part  20:6 34:23
  39:19 43:11 47:2
partially  8:13
participate  7:12
participating
  45:13
participation
  10:16,18 30:22
  31:4
particular  32:2
particularly  8:15
  56:21
parties  8:15,19
  10:23 15:14 18:1
  23:20,25 30:6
  31:13 33:3,5
  36:10 38:15 39:3
  40:9 41:21,24
  42:4 43:1
partners  27:9
  33:6
party  7:15 10:25
  21:25 27:7 40:6
party's  17:15
passage  13:21
passed  46:15,17
paul  6:15
pause  26:2,4
pay  20:9 22:6
  34:25 39:7 40:6
  40:23 42:12,17
  43:4
payable  58:3
paying  22:2 38:25
  40:19,24
payment  3:15
  22:7,8 35:6 37:20
  43:11 60:8
pending  58:18
people  49:22

percent  24:6
period  14:10
  42:25 43:3 47:13
  57:13
periods  38:20
  56:6
permissive  16:10
  16:19 31:18,22
  32:8 33:24 34:6
  35:14,23
permissively
  32:11 33:10
permitted  7:10
  13:6 54:9 55:1
perplexed  56:11
personal  22:2,8
perspective  54:4
persuasively
  57:17
pertinent  14:4
peter  4:9 8:22
  44:1 54:15
petition  15:18
  19:20 43:3,6
  45:23 47:10 48:15
  48:17 49:21 50:16
  50:20,25 54:24,25
  55:19,21 57:3,5,8
  57:12,13,15
petitions  15:6
petrie  19:11 20:2
philip  5:6
phone  10:3 47:25
phones  7:5 10:7
pick  56:25
picked  10:18
pickering  5:1
pictures  19:5,6
  20:15
plaintiffs  1:13
  13:12 14:22,25
  15:3 16:8,14,20
  16:25 24:4 30:5

plan  8:7 29:16,24
  30:19 43:17 58:4
  58:20
platform  7:8
play  28:4
pleading  52:13
pleadings  37:21
please  7:5,13,15
  8:17 10:6 36:24
  36:25 58:22
pleased  9:3
pockets  44:25
point  9:13 28:10
  28:23 35:17 42:10
  43:19 46:7,13
  48:19 53:25 54:10
  57:20
policies  14:8,8,13
  14:20,25 22:5,7
policy  21:25
portion  20:10
position  39:18
  40:11 45:12,15,16
  45:18 49:9 50:13
possession  38:22
  39:8 46:16
possibility  30:19
post  28:16 30:25
  43:3,6 45:23
  49:20 50:16,19,25
  54:24,25 57:3,7
  57:12,13,15
potential  22:3,19
  25:15 30:14
precedent  54:11
precisely  52:15
predominance
  16:5
predominate
  32:15 34:14 35:13
prepare  36:21
prepetition  15:1
  20:21 2[...]

22:25 25:19 35:16
39:1 40:8,10,12
41:1 42:8,17 43:3
45:19 49:3 50:21
50:23 51:8 54:3
**presence** 32:17
33:4
**present** 5:22
21:10
**presentation** 38:4
43:9
**presented** 16:22
26:15 28:20 29:5
38:7
**preserving** 24:18
**pretty** 49:13
**prevents** 31:25
**preview** 45:11
**previously** 35:1
**price** 55:16
**principally** 18:6
**principle** 42:9
**prior** 15:18 27:18
30:20 47:3,17
**priority** 24:15
41:23 53:9
**private** 7:9
**probably** 40:9
45:6 52:3
**problem** 47:14
49:4 50:21 51:18
51:21
**procedures** 8:8
**proceed** 8:3
**proceeding** 8:12
8:20 12:25 13:3,6
13:7 14:3 15:14
16:12 19:17,18,21
19:23,24,25,25
20:4,25 21:16,19
22:13 23:3 25:1
25:25 26:17,18
32:3,17,21,22

33:2,5,18 34:14
34:16 35:21 37:4
37:7,10
**proceedings** 3:17
16:14 18:21 19:1
19:2,13,14 20:24
25:21 27:20 28:15
59:1 61:4
**proceeds** 20:4
22:1 24:19,20
30:14
**process** 23:1
**professional** 3:7
**professionals** 9:4
9:14 12:6
**progress** 27:17
**prolong** 26:18
27:15 29:10
**proof** 25:12
**properly** 35:17
38:15
**property** 14:9
41:21 42:2,3
54:22
**proposed** 12:8
19:4
**proposing** 8:10
**proskauer** 3:2 4:3
7:20,22 9:6 11:17
36:24 37:18 44:2
54:15
**protect** 40:16
**protection** 21:7
**provide** 14:3
15:13 20:9 23:24
50:8 56:24
**provided** 14:9
30:19 49:25 50:1
55:24
**provides** 17:9
18:4,19 19:12
24:13,14,16 30:25
31:24 46:25

**provisions** 22:6
**purchase** 23:25
**purchasing** 47:3
**purpose** 40:16,21
**purposefully**
10:14
**purposes** 14:4
**pursuant** 13:9
15:3,11 16:2 17:4
36:8 38:11,16
58:3
**purview** 51:15
**put** 9:19 11:11
31:7 46:12

**q**

**qualify** 51:14
**quantifiable** 56:4
56:21
**quantify** 49:16
**question** 10:4,8
27:2 35:18 43:7
**questions** 9:12
37:3
**quick** 8:6 30:10
**quickly** 8:18
26:22 27:2
**quite** 37:17
**quote** 16:6,20
17:6,18 18:20
19:24,25 20:1,2,4
20:12 21:20 22:1
24:9 26:20 27:1
27:16,18 28:2,3
29:22,23 31:25
32:6 33:10 34:22
49:21

**r**

**r** 2:21 4:1 7:1 61:1
**raise** 40:4
**raised** 11:16
**reach** 25:15 36:23
**reached** 9:7

**read** 12:21 13:21
38:2,6
**readily** 21:13
49:16
**real** 41:11,20
**really** 49:11 54:20
56:2,2,4
**reason** 31:14 33:9
52:14
**reasons** 29:14
36:1 37:1 42:21
58:7
**recall** 47:10
**receipt** 48:4
**receive** 24:19
**received** 47:1
**recess** 37:15
**recited** 10:10
**reclaim** 47:12
**reclaimed** 47:13
**reclamation** 38:16
39:3,6,14,17,18
39:22,24,25 40:14
40:18 41:3,5,9
42:9,15,20 45:20
46:6 47:1,16,18
48:24 51:7,7,10
51:15,18 54:8
56:15,16,16 57:10
57:11
**recognition** 51:10
**recognized** 43:5
**recommends**
32:14 34:12
**record** 7:14,17
9:19 11:11 13:22
37:1 38:19 43:15
51:21 52:10 55:22
58:6,7 61:4
**recording** 7:9
**recordings** 7:9
**recourse**

recovered 22:21
recoveries 30:5
recovery 20:10
  21:2 22:7,19 23:1
  24:4,5,7,23 25:11
  25:15 44:25
reduce 11:17,18
  11:20,22
reduced 9:15
reductions 12:8
  12:13
reference 15:12
  40:4
referred 18:22
reflected 9:9
  11:14 55:15
reflects 7:25
refusal 57:10
regarding 18:1
  21:10 28:21 35:12
registered 7:11
related 17:8 18:8
  18:11,17 19:9
  22:17,24 25:25
  32:3,17
relatedness 32:20
  34:16
relating 21:18,20
relationship
  19:16 21:1
relative 26:14
  27:13 28:16,18
  29:5 38:9
relatively 29:22
  53:10
release 48:2
relevant 14:24
  26:16 28:15 33:10
  34:17 38:20 39:10
reliance 51:6
relied 41:12
relief 15:6

relieve 41:2
rely 41:7,14 49:15
remain 17:1
remaining 31:12
remand 12:22,24
  13:7 16:2 27:7,14
  29:13 31:17,22
  32:6,9 34:18 35:3
  35:22 36:4,8 60:5
remanded 15:17
remanding 34:6
remoteness 32:20
  34:16
removal 25:7
removed 15:8
removes 39:17
render 20:24 23:2
  47:16
rendered 42:15
  45:20
renders 16:12
reorganization
  19:20,21 29:18,24
repeatedly 20:17
reply 13:17 28:4
  35:19 54:18 57:17
report 9:3
represented 9:14
  22:2
request 13:2
  16:25 24:8 31:22
  43:11
requested 58:3
required 13:4
  15:25 16:10 17:23
  22:9 29:21 31:23
  34:3 36:6
requirements
  31:15 36:2
requires 18:14
  28:13 50:19
resale 48:22

resolution 20:6
  23:10 25:1,18
  27:20 30:10,20
  31:7,8 34:23 35:8
  35:9
resolve 11:15 12:8
  29:2 35:19
resolved 8:17
resolving 21:20
resort 54:6
resources 45:3
respect 16:11,19
  17:3 19:8 28:18
  29:4 31:12 32:1
  34:18 57:21
respective 26:15
respectively 8:9
respond 21:12
  53:12 55:7
rest 21:3
result 14:18 21:2
  39:24 41:9
results 24:3 30:4
retail 14:16 19:11
  20:2
retain 13:22
retention 30:13
retrieve 47:23
return 41:3 46:13
  55:3 57:10
reverse 39:23
revert 46:10
reverted 40:14
  46:7
review 9:18 18:24
  19:5
reviewed 12:13
revised 9:18 12:15
right 7:18 8:2,24
  9:24 11:1,25
  12:10,11,17,24
  13:22 31:20 33:4
  36:23 37:3,16

38:1 41:4,18
  43:22,24 46:10
  48:25 49:1 50:12
  50:16,20 51:9,10
  55:9 58:10,13,17
  58:21
rights 41:21 42:2
  42:3 54:22,24
riley 6:11
rings 25:4 56:21
rise 50:25
risk 24:18
road 61:21
robert 6:9
rose 3:2 4:3 7:22
roseland 5:11
roster 7:11
rule 43:16
ruling 13:22 14:5
  31:20 36:12 37:3
rulings 60:3
run 11:2,5,8
russell 6:23

s

s 4:1 7:1
s.d.n.y. 17:14,18
  21:4 27:10 28:17
  30:1 32:10 33:8
  33:13 34:1
safe 58:23
sale 10:17 23:15
  23:16,17,20,22,23
  23:24 24:9,10,21
  24:22 25:11 30:7
  30:18,22 31:5
  35:4,5 42:14
  44:17
sales 47:8 55:23
  56:24
salvatore 6:2
sandler 3:8
  9:6 11:2

[satisfied - state]                                                    Page 16

**satisfied**  17:20,25
  31:14
**satisfy**  24:13,14
**saying**  45:14 53:1
  53:7
**says**  56:8
**scc**  1:3,4 3:17
**scenario**  28:3
  29:23
**schedule**  9:10
  11:14
**scheduling**  58:19
**schwartz**  4:16
  11:10 12:1,2,3,5
  12:11
**scratcher**  44:13
**screen**  36:21
**second**  19:23
  20:20 21:6,12,18
  22:9 26:20 35:12
  39:12,16 41:20
  50:18
**secondly**  57:12
**section**  13:4,6,9
  16:3,3 17:4,9,12
  17:24 18:3,7,14
  18:19,23,24 19:1
  19:12 26:8 30:21
  30:23 31:4,11,13
  31:16,24 32:4,5,7
  32:19 36:2,8
  38:17 40:16 45:22
  46:18
**secured**  20:9
  24:13
**securing**  48:3
**see**  17:12,16 19:5
  21:3 23:20 27:9
  28:4 31:2 32:9
  33:5,19 35:19
  37:17,17 51:12
**seeing**  50:10

**seek**  10:23 15:3
**seen**  8:6
**self**  47:4
**sell**  56:23
**seller**  39:9 40:17
  42:5
**selling**  29:15 47:4
**senior**  46:18
  47:17,19 48:7
**sense**  11:2
**sent**  7:23
**sept**  28:17 33:8
**september**  15:7,7
**seriously**  12:7
**served**  38:23
  39:22
**service**  57:9
**set**  10:15 14:13
  26:11 58:7
**settlement**  23:17
  33:6 45:5
**severing**  32:23
**shading**  51:3
**sharing**  24:20
**shelley**  2:22
**shelves**  55:16,17
  55:24 56:6,7,8
**shelving**  44:16
  46:8,16 48:14,20
  48:21 56:22 57:4
**shoes**  42:1
**shop**  27:19
**shopping**  33:3
**short**  41:11
**show**  17:15
**showing**  33:24
**showtime**  19:6
  20:15
**side**  51:5
**significant**  21:21
  25:6 38:7 39:12
  53:14

**significantly**
  27:13
**similar**  42:11
**similarly**  27:1
  32:5
**simply**  31:7 35:2
  41:4,9 50:2 54:9
**singer**  6:14
**situation**  43:10
**six**  17:24 18:1
**sixth**  18:7 40:17
  42:1
**size**  20:13
**skrynski**  4:8
**skrzynski**  7:21,22
  8:3,5,21 9:3
**small**  38:10
**smith**  17:21
**social**  14:15
**sold**  30:3 42:12,16
**sole**  17:10 18:4
**solely**  35:16
**solicitation**  8:8
**solutions**  7:8
  61:20
**somewhat**  25:4
**sonya**  3:25 61:3,8
**soon**  46:16 47:8
**sorry**  10:2 46:20
  47:7 51:20 52:5
  52:23 58:13
**sort**  38:7 40:2,3
  41:11,12,24 42:21
  48:20 54:21,23
  55:2
**sound**  12:13 33:22
  41:24
**sounds**  8:21 33:11
  55:12
**source**  22:3
**southern**  1:2 9:10
  15:10 41:13

**speak**  7:5,14,16
  45:12
**specific**  22:22
**specifically**  15:18
  18:1 20:16 30:21
  30:24 34:8 42:14
**speculate**  45:4
**speed**  26:20 29:3
**speeds**  26:23
**speedy**  29:19
**spending**  52:16
**spent**  50:4
**sport**  44:11
**spot**  53:23
**square**  4:5,20
**ss**  21:7
**standard**  51:2
  56:17
**standing**  15:12
**standpoint**  43:10
**stankowski**  6:17
**starr**  1:15 3:18
  5:2
**start**  7:20 8:17
  39:4 45:14
**started**  12:23
**state**  13:8,9 14:23
  15:8,9,17,21,22
  16:2,5,15,22,23
  17:7,11,12 18:3,5
  18:10,13 23:3
  25:19 26:8,13,17
  26:22,24 27:3,5,8
  27:12,15,19 28:1
  28:8,12,18,20
  29:3,7,8 30:9
  31:10,17 32:1,2
  32:15,18,23,24
  33:10,11,17 34:7
  34:12,13 35:12,15
  35:16,17 36
  39:10 5

Case 1:20-cv-07437-LGS   Document 32   Filed 04/27/21   Page 106 of 110
20-01222-scc   Doc 92   Filed 02/18/2021   Entered 02/18/2021 13:14:31
Exhibit A   Pg 78 of 80

[state's - transcript]                                                                Page 17

state's  16:24
stated  19:23 20:25
  24:9 37:1 43:8
statement  8:7
  53:13 58:20
states  1:1 2:1 4:11
  9:7,16 11:16 12:5
  14:17 15:9 21:7
  42:14
stating  20:12 58:6
status  3:19 7:25
  26:16 50:15
statutes  45:21
statutory  15:20
stay  58:23
stead  44:6
stewarding  44:5
stipulation  38:8
  43:2 46:24 47:7
  48:10 56:8
stop  27:19 52:6,7
store  14:18 47:11
  51:25
stores  1:8,12 3:18
  7:4 13:11 14:21
  41:6 48:13,14,16
  48:17,19,21 55:17
  55:19 56:6,7,7
  57:5
street  4:13 5:3,17
stretto  3:4 9:6
  11:16
strip  48:6
stuff  44:15,16
  47:23 49:3 50:20
  51:6,8 52:2
subject  9:4 14:12
  18:24 39:7,17
  46:17 47:16 48:5
  51:22 54:3 57:23
submit  10:21
  15:24 19:4 20:16
  36:10,24 58:5

submitted  9:18
  11:15
subsection  18:23
subsequent  13:24
substance  32:21
substantial  33:14
  34:9
successful  20:8
suffered  14:17
suggest  37:5
suite  4:13 61:22
summary  14:3
  15:13
sundt  6:12
supp  27:10
suppliers  47:16
supplies  50:24
support  13:16
  24:8 35:14 48:1
  49:9
supportive  52:13
  52:18 53:2,4
supports  21:9
  28:9 43:15 45:12
suppose  44:20
supreme  13:8
sure  43:13 44:12
  46:4 47:21 50:11
surplus  1:15 3:18
  5:2
sustained  15:1
sweat  52:23
swift  58:21
swiftly  28:22

              t

t  6:20 61:1,1
take  8:14 12:14
  12:23 37:7 43:25
  44:3,24
taken  45:18
takes  43:21 51:15
tal  6:14

talk  50:17
talking  50:14
technical  49:8
  56:13 57:6
technologies  27:5
telephonically  4:8
  4:9,16,23 5:6,13
  5:20,22 7:8
tell  47:22
tempted  50:2
tenant  40:4 42:18
tenuous  16:6
terms  14:12 18:14
  23:24
test  15:20 17:19
tests  32:8
thank  7:6 8:21,24
  11:25 12:10,11,17
  12:18 37:10,13,16
  38:5 44:8,10
  45:11 52:9 54:13
  58:9,11,16,17,24
  58:25
thereof  32:13
thing  40:3 54:1
things  22:11
think  38:14 39:12
  41:11,12,25 42:10
  42:13,21 43:1,18
  46:10,25 47:14,25
  48:8 50:12 51:1,4
  53:20 54:20,20,23
  55:5,7,14 56:13
  56:20 57:11,16,24
  58:1,11,22
thinking  36:19
  52:3
third  18:6 21:25
  27:1
thirds  26:3
three  48:16 55:17
  55:21 56:7

threshold  24:5,7
  24:21
time  7:16 9:18
  13:21 24:18 25:6
  38:12,22 44:7
  48:3,12 56:6
  58:14
timeliness  26:19
  28:9 29:21
timely  15:22
  16:15 17:6,11
  18:2,10,13 26:6,7
  26:10 27:4,9 28:1
  28:8,10,13 30:11
  31:10 38:15,21
times  4:5,20 36:18
  58:15
title  16:3 17:5
  18:19,21,21,22,25
  26:9 31:11,24
  32:3,4,5 36:3,9
  39:6,7,21,24,25
  42:5 46:7,9,15,17
  48:5 55:3
today  10:11 12:16
  13:20 45:9,18
  58:18
today's  54:23
top  57:18
total  24:3,6
totally  51:9
tracy  5:24
trade  5:3
traditional  29:17
transaction  50:16
  50:20 55:1,4 57:3
  57:8,12,15
transactions
  45:23
transcribed  3:25
transcript  25:17
  27:23 31:23
  61:4

Case 1:20-cv-07437-LGS   Document 32   Filed 04/27/21   Page 107 of 110
20-01222-scc     Doc 92   Filed 02/18/2021   Entered 02/18/2021 13:14:31
Exhibit A     Pg 79 of 80

[transfer - yeah]                                                    Page 18

transfer 30:25
transferred 15:11
treated 39:9 50:22
treatment 49:12
tremendous 14:18
trial 33:4
triggered 22:12
tronox 33:25
troubling 49:7,14
true 61:4
trust 31:1
trustee 4:12 9:7
  11:16 12:5
trustees 9:16
try 45:7
trying 10:5 40:25
  53:6
turn 8:19 13:25
  26:21 31:18 37:9
  37:19 40:8
twelve 21:3
two 13:4 26:2
  27:17,18 37:8
  48:14 49:2 55:19
  56:6
tyler 6:22
type 20:6
typically 29:18

u

u.s. 2:23 4:12 21:8
  21:13,15,17,22,24
  22:5,17 32:9
u.s.c. 13:4,6,9
  17:12 32:4,7,19
ucc 38:11,16
  39:10,15 40:13,21
ultimate 20:13
ultimately 53:3
unable 45:21
uncertainty 28:20
unclear 43:13
undeniable 16:20

undercuts 29:18
underlying 30:3
understand 45:2
  47:20 50:2
understands 24:2
understood 51:23
uniform 47:15
unique 19:24
uniquely 19:24
unit 48:20
united 1:1 2:1
  4:11 9:7,16 11:15
  12:5 15:9 21:7
units 46:16 48:14
  48:21
unknown 2:25
unlawfully 55:2
unquestionably
  44:14
unquote 16:6,20
  49:21
unsecured 3:12
  5:9 13:14 20:10
  24:17 34:22,25
  35:7 44:21 45:24
  46:1 50:8 52:11
unsettled 32:16
update 8:6
updates 7:25
upside 30:13
urgency 28:4
  29:23
use 22:9 38:25
  40:6,18,19,22,24
  41:5 42:20,24
  43:3,5 50:24
  54:24 55:1 56:15
  56:16 57:13,25
uses 40:5 42:19
usual 43:16

v

v 1:14 3:18 17:17
  17:21 19:6 20:15
  21:3,7 26:12,24
  27:9 28:16 29:25
  32:9 33:6,12,19
va 17:22
valentine's 58:23
valid 39:16
value 20:7 24:12
  42:24 48:21 49:18
valueless 42:15
  45:20
values 56:19
vandermark 4:23
  37:18,21,23,24
  38:2,5 43:8,18,22
  43:23 54:17,19
  57:16,18 58:9,25
varick 4:13
various 14:7,15
veritext 61:20
verted 55:3
view 56:12 57:5
virginia 17:21
visan 21:4
vista 17:21
vladimir 6:13
voice 37:11
voluntarily 11:17
  11:18,20,22
voluntary 9:8
  15:6

w

w.r. 33:12
waiting 37:16
want 46:6 52:2
  54:17 55:9 56:5
wanted 54:9
warehouse 49:25
warning 12:22
warranted 16:10
  22:11 30:17 35:24

water 37:8
way 8:6 9:13 26:3
  44:2 56:18
ways 57:7
we've 37:17 41:1
weeks 49:2
weg 10:1,8,14,17
  10:19
weigh 29:6 34:6
weighed 29:22
  53:25
weighs 35:21
weisenberg 5:13
  45:13 52:8,9,10
  52:20,25
welcome 37:7
white 4:18 37:24
william 6:21
williams 4:18
  37:24
willing 47:25 48:2
wilmer 5:1
wish 44:5
wishes 12:12
  43:14
wit 18:7
wl 28:16 33:7,13
  33:23
woodrow 29:25
work 52:20
world 5:3
worldview 29:24
write 9:8,8 11:5,9
  11:24
written 13:23
wrong 57:22

x

x 1:5,11,17 60:1
xi 27:5

y

yeah 10:2,3
  48:13 5

20-01222-scc    Doc 92    Filed 02/18/2021    Entered 02/18/2021 13:14:31
Exhibit A    Pg 80 of 80

**year**  36:17
**york**  1:2 2:3 4:6
    4:14,21 5:4 13:8,9
    15:10 38:17
**young**  4:9 6:18
    8:22,25 9:1,22,25
    10:2,7,9,13 11:4
    11:12 12:18 27:10
    44:1,1,8,11,12
    45:10 46:4,9,14
    46:20,23 47:21,24
    48:12 49:1 50:11
    51:9,20 52:4,5
    54:14,15 55:9,11
    56:9 58:10,11,15

**z**

**zero**  45:23
**zoom**  36:20



United States Bankruptcy Court for the

Southern District of New York



This page certifies that document is a True Certified Copy


I HEREBY ATTEST AND CERTIFY ON  3/10/2021
THAT THIS DOCUMENT IS A FULL, TRUE AND CORRECT
COPY OF THE ORIGINAL FILED ON THE COURT'S
ELECTRONIC CASE FILING SYSTEM.

CLERK, US BANKRUPTCY COURT, SDNY

BY: /s/ Annya Acosta DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES CUSTOM HOUSE
ONE BOWLING GREEN, 6TH FLOOR
NEW YORK, NY 10004-1408

OFFICIAL BUSINESS

RECEIVED
APR 26 2021
CLERK'S OFFICE
S.D.N.Y.



$3.40
US POSTAGE
FIRST-CLASS
0625S008868163
FROM 10004

$1.80
US POSTAGE
FIRST-CLASS
0625S008868163
FROM 10004

U.S. District Court
Southern District of New York
Attn: Ruby J. Krajick, Clerk/Richard Wilson, Chief Deputy
500 Pearl Street
New York, NY 10007

USMJ3
SDNY



Civil Docketing

20 CV 7437
BCS

TSI